UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DENISE SZANY, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:17 CV 74 |
| JAIME GARCIA and CITY OF HAMMOND, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION and ORDER

Plaintiff Denise Szany ("Szany")[1] brings claims against defendant Jaime Garcia ("Garcia") and her employer, defendant City of Hammond (the "City"), pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The matter is now before the court on defendants' motions to dismiss. For the reasons set forth below, the City's motion to dismiss (DE # 36) will be denied and Garcia's motion to dismiss (DE # 39) will be granted.

**I.  BACKGROUND**

Both Szany and Garcia are employed by the City of Hammond. (DE # 34 ¶ 11.) Garcia is a police officer with the City. (*Id.* ¶ 7.) Although plaintiff does not state her specific occupation, the City asserts that she is also a police officer. (DE # 37 at 2 n.1.)

---

[1] Plaintiff was originally referred to as "Christine Szany" in her initial complaint (DE # 1). Since the second amended complaint, she has been referred to as "Denise Szany." (*See* DE # 34.) The court terminated Christine Szany as a party and added Denise Szany as a party on August 4, 2017.

Plaintiff alleges that on October 19, 2016, she was physically attacked by Garcia at their workplace. (DE # 34 ¶¶ 7, 12.) According to plaintiff, Garcia initiated contact when he grabbed her by her vest. (*Id*. ¶ 8.) Thereafter, a struggle ensued for approximately 45 seconds while Garcia grabbed her tighter, shook her, and twisted her body. (*Id*.) She alleges that she finally broke away, only to be grabbed again by her belt. (*Id*. ¶ 9.) Finally, plaintiff says Garcia struck her on her buttocks with an open hand. (*Id*. ¶ 10.)

Based on that incident, plaintiff filed an initial complaint on February 15, 2017. (DE # 1.) That was followed by a first amended complaint (DE # 32) and the present second amended complaint (DE # 34). Plaintiff's first claim is stated against Garcia and is brought under 42 U.S.C. § 1983 for "assault, battery, false imprisonment [and] sexual misconduct pursuant to the 14th Amendment." (DE # 34 at 3.) Plaintiff also classifies this claim as an "equal protection claim." (*Id*.) Her second claim is a "*Monell* Claim" against the City, pursuant to 42 U.S.C. § 1983. (*Id*. at 5.) Plaintiff's third and final claim is also brought against the City for "sexual harassment [and] hostile work environment," pursuant to 42 U.S.C. § 2000e-2. (*Id*. at 7.)

On August 9, 2017, the City filed a motion to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 36.) Twelve days later, Garcia also filed a motion to dismiss pursuant to Rules 12(b)(6) and 12(c). (DE # 39.) Plaintiff has responded to both motions, and defendants have replied. (DE ## 41-1, 42, 43, 46.) Thus, the motions are both fully briefed and ripe for review.

## II. LEGAL STANDARD

Defendants have moved to dismiss plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a Rule 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247,

251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

However, plaintiffs do not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

Defendant Garcia's motion also relies on Federal Rule of Civil Procedure 12(c). In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the court applies the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007).

### III. DISCUSSION

#### A. Claim Against Jaime Garcia

Plaintiff brings her sole claim against Garcia under 42 U.S.C. § 1983. In order to state a § 1983 claim, a plaintiff must allege (1) that some person deprived her of a federal right and (2) that the person who has deprived her of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Garcia moves to dismiss the § 1983 claim against him on the basis that plaintiff has failed to sufficiently allege he

4

was acting under color of state law, at the time of the alleged incident. (DE # 40 at 2–3.)

Plaintiff has alleged that Garcia acted under color of law, while on duty as a police officer and in police uniform, when he attacked her. (DE # 34 ¶¶ 7, 17.) However, the simple fact that an action was performed by a state official does not mean it was necessarily performed under color of state law. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). "[R]ather, an action is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (internal quotation marks omitted). Whether the defendant acted under color of state law is a question of law for the court to decide. *Chavez v. Guerrero*, 465 F. Supp. 2d 864, 869 (N.D. Ill. 2006).

Specifically as to police officers, the Seventh Circuit has held that "[a]cts committed by police officers even while on duty and in uniform are not under color of state law unless they are some way related to the performance of police duties." *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) (internal quotation marks omitted); *see also Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) ("Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties.").

Although plaintiff alleges plainly that Garcia was "acting as a police officer when he physically attacked and battered [her]," the complaint contains no explanation as to how Garcia's actions were related to his performance of police duties. In her response to

5

Garcia's motion, plaintiff says she has no new facts to provide, but then proceeds to "reword" her allegations in an attempt to properly allege Garcia acted under color of law. (*See* DE # 42 at 5.) There, she states in a conclusory manner that "Garcia's violent attack on [p]laintiff was in every way related to the performance of his police duties." (*Id*.) She continues, "[t]he state vested him with the authority [to] use physical force . . . . He elected to use such force on [p]laintiff." (*Id*. at 5–6.) She also asserts that Garcia acted under color of law, because plaintiff is a woman. (*Id*. at 6.) Even drawing all reasonable inferences in plaintiff's favor, these statements still do not identify any single police duty related to Garcia's conduct.

Additionally, the fact that Garcia is permitted to use force in his endeavors as a police officer does not mean that his use of force as a private actor must also come under color of state law. *See Plaats v. Barthelemy*, 641 F. App'x 624, 627 (7th Cir. May, 4, 2016) ("Section 1983 does not cover disputes between private citizens, even if one happens to be an officer."). Any "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. Unites States*, 325 U.S. 91, 111 (1945). In the case at hand, plaintiff admits Garcia made contact with her "in furtherance of obtaining sexual gratification." (DE # 34 ¶ 19.) Such sexual pursuits are private in nature, and are not related to Garcia's duties as a police officer. *See Chavez*, 465 F. Supp. 2d at 871 (finding a defendant police officer did not act under color of state law and dismissing a § 1983 claim against him where the plaintiff admitted the defendant officer was acting "for his own sexual gratification").

However, even if Garcia's actions were private and unrelated to police duties, plaintiff still contends that her claim survives, since Garcia's actions also amount to sexual harassment by a state actor. (DE # 42 at 3.) Plaintiff is correct that sexual harassment by a state actor violates the Equal Protection Clause and is actionable under § 1983. *See Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015); *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986). And, it is true that plaintiff brings her claim against Garcia under § 1983, in part, for "sexual misconduct pursuant to the 14th Amendment." (DE # 34 at 3.) However, even with a sexual harassment claim, plaintiff must still properly allege that Garcia acted under color of state law to satisfy § 1983. *See Valentine v. City of Chicago*, 452 F.3d 670, 682–83 (7th Cir. 2006).

Plaintiff cites to *Gorcos v. Town of St. John*, No. 2:15-CV-084 JD, 2016 WL 5106947, at *4 (N.D. Ind. Sept. 20, 2016), in which another judge in this district, citing *Valentine*, ruled that a harassing defendant acted under color of state law even where that defendant sought personal sexual gratification. Looking to the relevant Seventh Circuit decisions the court held that "[i]n the context of a Fourteenth Amendment sexual harassment claim" a determination that a defendant acted under color of state law "requires a showing that the defendant had some authority by virtue of his position that he used in connection with the plaintiff's harassment." *Id*. In *Gorcos*, the plaintiff asserted that the defendant was her supervisor, and therefore the court found the "allegations plausibly suggest[ed] that [the defendant] used the authority of his office to avoid responsibility for his workplace harassment of a subordinate and thus he acted

7

under color of state law." *Id.* (internal quotation marks omitted). Similarly, in *Valentine*, the Seventh Circuit specifically relied on the defendants' supervisory positions in relation to the plaintiff in finding that a material question of fact remained as to color of law, at the summary judgment stage.[2] 452 F.3d at 683.

In fact, in each Seventh Circuit case cited by defendant in which the court found defendants acted under color of state law on a sexual harassment claim, the harasser was either a supervisor of the plaintiff or held some other clear authority over the plaintiff based on a disparity in their positions. *See Locke*, 788 F.3d at 665; *Bohen*, 799 F.2d at 1182; *see also Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413–14 (7th Cir. 1997).

In the case at hand, no such disparity in seniority between plaintiff and Garcia has been plausibly alleged. Rather, the City asserts that both plaintiff and Garcia are police officers of the same rank. (DE ## 37 at 2, 46 at 1.) The court suspects that this is true, as plaintiff even admitted that she was an officer in her original complaint. (DE # 1 ¶ 11.) In its brief, the City seems to suggest plaintiff has intentionally omitted this fact from the newest amended complaint, in order to gain an advantage in litigation. (*See* DE # 37 at 2.)

But, in ruling on this motion, the court must look only to the allegations contained in the second amended complaint and the inferences to be drawn from them. On the face of the second amended complaint, there are no facts alleging that both

---

[2] The Seventh Circuit raised but did not answer the question as to whether a defendant must be a supervisor to act under color of state law for the purposes of sexual harassment claims. *Valentine*, 452 F.3d at 683.

8

Garcia and Szany are officers of the same rank, so the court cannot consider that to be the case at this time. (*See* DE # 34.) Regardless, although Garcia certainly had *some* authority as an officer, plaintiff does not allege a disparity in authority between Garcia and herself and she does not allege Garcia was her supervisor in the workplace.

Given the lack of allegations as to his superior rank, it is not plausible that when Garcia acted as he did, he was able to do so solely because of the position of authority he enjoyed. *Cf. Walker*, 129 F.3d at 413–14 (finding a defendant acted under color of law, even "in pursuit of her own interests" when "she was able to do so solely because of the position of authority she enjoyed"). Furthermore, the second amended complaint does not plausibly suggest that Garcia used any authority over plaintiff to avoid responsibility for harassment.

In sum, the allegations regarding Garcia's interactions with plaintiff demonstrate that his actions were purely private, and not related to the performance of police duties. Furthermore, Garcia's position as an officer gave him no relative power over plaintiff in the workplace. Thus, Garcia's actions fall outside the scope of § 1983, and the court will dismiss plaintiff's claim against him.

      B.      Monell *Claim Against the City of Hammond*

Plaintiff's first claim against the City is a § 1983 "*Monell*" claim. (DE # 34 at 5.) A local government or municipality can be subject to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In order to state a § 1983 claim against a municipality, the complaint must allege that "an official policy or custom" of the

municipality "not only caused the violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). "The caseslaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority causes a constitutional injury." *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir. 1994) (internal citations omitted), *superseded by statute on other grounds*. The City moves to dismiss the claim on the basis that plaintiff has failed to properly allege that any such express policy, widespread practice, or final policymaker caused her injury. (DE # 37 at 10–12.)

Plaintiff does not allege any express policy existed which caused her injury. (*See* DE # 34.) Additionally, although she alleges that certain individuals with the City (not including Garcia) held final policymaking authority, she does not state that any of them caused her injury.[3] (*See id.* at 5–6.) However, on the face of the second amended complaint, plaintiff does allege that customs or practices of the City caused her injury. (Id. ¶¶ 33–34, 36–38.) Those practices included (1) "fostering a work environment in which [Garcia] was permitted to assault, batter, molest, and falsely imprison [her]," (2)

---

[3] Plaintiff briefly asserts the "edicts and acts" of Garcia "fairly represent official policy" of the City. (DE # 34 ¶ 35.) However, this is a vague allegation that fails to state either the existence of an express policy or that Garcia himself was a final policymaker.

10

"fostering an environment . . . in which women . . . are treated in a manner distinguishable from men . . . by male co-workers and supervisors," (3) "tolerance of the described misconduct toward women," and (4) "failure to stop or take reasonable steps to prevent the unconstitutional conduct in issue, or to properly investigate such conduct."(*Id.*)

The City classifies these assertions as conclusory and boilerplate allegations. (DE # 37 at 11–12.) It also points out that "[t]o establish a municipal policy or custom, [the plaintiff] must allege a specific pattern or series of incidents that support the general allegation of a custom or policy." (*Id.* at 12.) This language comes from the Seventh Circuit's decision in *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009), which itself cites to *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

However, this *Hollins/City of Canton* requirement applies to the summary judgment stage, not to motions filed pursuant to Rule 12(b)(6). In fact, this is not the first time the City of Hammond has incorrectly referenced this "requirement" in cases before this court. See *Johnson v. City of Hammond*, No. 2:14 CV 281, 2016 WL 1244016, at *2 (N.D. Ind. Mar. 29, 2016). In Johnson, this court wrote the following:

> *Hollins* and *City of Canton* do not stand for the points that Hammond asserts. City of Hammond does not delineate pleading standards, it instead explains (in the context of a jury verdict on a failure-to-train claim) what a Plaintiff must prove to establish municipal liability for failure to train. . . . Similarly, although *Hollins* uses the word "allege," the discussion therein on the quantum of evidence necessary to establish a pattern or series is in regard to a summary judgment in the district court finding that plaintiff had not identified enough evidence to create an issue of fact. In the present case, the complaint pleads

> that Hammond had a policy or custom of approving racial profiling and false arrests, and that is enough: providing evidence of a number of incidents to show a pattern or series comes later.

*Id.* As in *Johnson*, the plaintiff in the case at hand has alleged the City had a custom or practice of approving unlawful conduct which caused a constitutional injury. She is not yet required to provide evidence of multiple incidents to show a pattern. Since plaintiff alleges a custom or practice, the court will not dismiss plaintiff's § 1983 claim on this basis.

The City also argues that the *Monell* claim should be dismissed because Garcia did not act under color of state law. (DE # 37 at 6.) While the court agrees that Garcia did not act under color of law, this does not necessarily doom plaintiff's *Monell* claim. "The actual rule . . . is much narrower: a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010). The City has made no argument that such a verdict would be inconsistent, in this case.

Additionally, by alleging that the City had a custom or practice which caused her constitutional injury, plaintiff has properly pled that the City acted under color of state law. "On a municipal liability claim, the [c]ity policy itself must cause the constitutional deprivation. Therefore, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson*, 910 F.2d at 1519–20 (reversing a district court's entry of summary judgment on the issue of color of law).

12

Therefore, the court will not dismiss plaintiff's § 1983 claim against the City.

C.  *Title VII Claim*

Plaintiff brings this claim against the City, alleging that it caused her to be discriminated against through "quid pro quo type sexual harassment" and "harassment by way of a hostile work environment," pursuant to Tile VII. (DE # 34 at 42–45.) The City moves to dismiss, focusing on the hostile work environment portion of the claim. (DE # 37 at 12–14.) It argues plaintiff has failed to allege a hostile work environment that was sufficiently pervasive and/or severe. (*Id*.) Meanwhile, plaintiff fails to address the Title VII claim in any substantive way in her response, instead relying on notice pleading standards and tangential arguments about the viability of sexual harassment as a basis for § 1983 claims. (*See* DE # 41-1.) Still, for the following reasons, the court will not dismiss plaintiff's Title VII claim.

To maintain an actionable claim for sexual harassment based on hostile work environment, "an employee must demonstrate that her co-worker or supervisor harassed her because of her sex." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002). "In addition, this harassment must be so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (internal quotation marks omitted). A hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id*. at 463. Courts must consider all the circumstances, including "the frequency of the discriminatory conduct;

13

its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998).

Defendant argues, in part, that there is no hostile work environment because there was only a single alleged episode of harassing behavior between plaintiff and Garcia. (DE # 27 at 12–13.) However, according to the Seventh Circuit, "[t]here is no minimum number of incidents required to establish a hostile work environment." *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001). "That is because harassment need not be both severe *and* pervasive to impose liability; one or the other will do." *Id*. (internal quotation marks omitted). Even one act of harassment can suffice if it is "egregious." *Id*.

In the case at hand, the severity of the single incident between Garcia and plaintiff is increased because the incident involved physical touching, rather than verbal behavior. *See Worth*, 276 F.3d at 268. It is also true that "direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment." *Id*. Garcia touched plaintiff's buttocks, which a reasonable person could consider to be an intimate body part.

On the other hand, defendant cites two Seventh Circuit decisions to support its position that Garcia's act—and specifically touching a person's buttocks—is not severe enough on its own to create a hostile work environment. (DE # 37 at 13–14.)
In *Adusumilli*, the Seventh Circuit found there to be no hostile work environment, as a matter of law, where a defendant's "most serious misconduct" was a "mild . . . poke" of

14

the plaintiff's buttocks. 164 F.3d at 362. The City also cites *Perez v. Norwegian-American Hosp., Inc.*, 93 F. App'x 910, 914 (7th Cir. 2004). In that case, the Seventh Circuit affirmed a district court's grant of summary judgment on a sexual harassment claim where the single asserted act of harassment was a slap to the female plaintiff's buttocks by a male co-worker, using a notebook, as she exited an elevator. *Id.* at 912, 914.

On its own, a reasonable person could view Garcia's alleged strike to plaintiff's buttocks with an open hand as more severe than a poke or a slap with a notebook. Additionally, the court must consider plaintiff's other allegations and note that this strike was not the totality of Garcia's actions. He allegedly grabbed plaintiff tightly, shook her, and twisted her for a period of 45 seconds. These allegations make Garcia's actions more severe than those detailed in *Adusumilli* and *Perez*, and even egregious.

Lastly, although plaintiff does not directly allege that her work performance was impacted by Garcia's actions, she does allege similarly that it detrimentally impacted her, caused her distress, stress, and humiliation, and caused her to suffer from stigma. (DE # 34 ¶¶ 51, 55.)

Although plaintiff may not ultimately prevail on her hostile work environment claim in the later stages of litigation, that is not the question the court faces at this time. "Motions to dismiss do not test whether plaintiffs will prevail, they merely test the sufficiency of the complaint." *Cotton v. South Suburban Hosp.*, No. 02 C 6000, 2002 WL 31572116 (N.D. Ill. Nov. 19, 2002) (denying a motion to dismiss on a hostile work environment claim where the plaintiff alleged only one incident of non-physical

15

harassment). Considering all of the circumstances as outlined in plaintiff's allegations, the claim is sufficient to survive the City's motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, defendant Jaime Garcia's motion to dismiss (DE # 39) is **GRANTED**, defendant City of Hammond's motion to dismiss (DE # 36) is **DENIED**, and this case is **DISMISSED as to Jaime Garcia**, only.

                                  **SO ORDERED**.

Date: January 30, 2018

                            s/James T. Moody
                            JUDGE JAMES T. MOODY
                            UNITED STATES DISTRICT COURT