**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DENISE SZANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-74-PPS-JPK |
| | ) | |
| JAIME GARCIA and CITY OF HAMMOND, | ) | |
| Defendants. | ) | |

**FINDINGS, REPORT, AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**38 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on (1) an Amended Motion by Plaintiff for Sanctions Against Defendant Hammond and Its Attorneys [DE 159], filed on February 26, 2019; (2) Defendant City of Hammond's Motion for Rule to Show Cause Why Plaintiff Should Not Be Held in Contempt [DE 163], filed on February 28, 2019; and (3) Plaintiff's Motion to Strike and for Sanctions [DE 233], filed on May 2, 2019. These motions are before the undersigned for Report and Recommendation by virtue of orders issued February 27, 2019 [DE 161], April 10, 2019 [DE 221], and May 6, 2019 [DE 242].

This Report constitutes the undersigned's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that District Court Judge Philip P. Simon deny Szany's motions and deny in part and grant in part the City of Hammond's motion, requiring that Szany's counsel respond to a show cause order through an affidavit, as more fully explained below.

## PROCEDURAL BACKGROUND

### A. Complaint and Initiation of Discovery

Plaintiff Denise Szany brings suit against Defendants City of Hammond ("Hammond") and Jaime Garcia. At the times relevant to this lawsuit, Szany and Garcia were employed as police

officers by Hammond. Szany alleges, in part, that Garcia grabbed her by her vest and shook and twisted her body, and, after she broke away, Garcia again grabbed her, this time by her belt, and slapped her buttocks. (Fifth Am. Compl. ¶¶ 8-10, ECF No. 118). Szany brings claims under Title VII of the Civil Rights Act of 1964 against Hammond and state law tort claims against Garcia.

Discovery commenced in this litigation after a March 15, 2018 preliminary pretrial conference. It has not proceeded smoothly, and the Court has issued numerous orders on discovery and other matters in the past year. In many ways, the motions presently before the Court are simply a continuation of previous discovery disputes, so a recounting of those disputes—and the Court's earlier rulings—is necessary.

### B. Motion for Protective Order and Related Matters

*1.    October 2018 Motion and December 2018 Court Orders*

On October 18, 2018, Hammond filed a Motion for Protective Order, in which it sought to shield Garcia's internal affairs file from discovery. Hammond argued that investigative and disciplinary documents in Garcia's internal affairs and personnel files were irrelevant and privileged except for documents involving Szany's complaint against Garcia and any other complaints by Hammond employees against Garcia for workplace sexual harassment or workplace sexual misbehavior. Hammond also requested a protective order prohibiting the disclosure of certain information produced in discovery. Szany asserted that Garcia's entire disciplinary record was relevant and discoverable, and she objected to Hammond's proposed protective order.

On December 4, 2018, the Court issued a preliminary order finding that, in the context of Garcia's internal affairs file, "complaints against or investigations of Garcia for sexual harassment, sexual misconduct, or sexually-motivated violence toward any person; complaints against or investigations of Garcia for violence toward coworkers; and complaints against or investigations

2

of Garcia for any matter complained of by Szany" were relevant and proportional to the needs of the case. (Op. & Order 3-4, ECF No. 96). After ruling on relevance, the Court took the Motion for Protective Order under advisement and ordered Hammond to submit, for *in camera* review, all relevant documents and information from Garcia's internal affairs file over which Hammond claimed privilege. After *in camera* review, the Court ordered that all the relevant documents submitted from Garcia's internal affairs file were protected by law enforcement privilege and, consequently, that the internal affairs file did not need to be turned over in discovery. (Order 3, ECF No. 102). The Court also issued a Protective Order on December 14, 2018, which provided that "no portion of Confidential Matter protected by this Protective Order may be shown or disclosed to any person or entity," subject to enumerated exceptions. (Protective Order ¶ 3, ECF No. 103).

2.      *Motion Practice on the In Camera Review Order*

        The December 14, 2018 Opinion and Order concerning *in camera* review (the "*In Camera Review Order*") led to additional motion practice. On January 21, 2019, Szany filed a Motion for Order to Show Cause, in which she argued that Hammond had violated the Court's *In Camera Review Order*. Specifically, Szany contended that Hammond was obligated to turn over complaints against and investigations of Garcia for violence and sexual misconduct. Szany's counsel expressed shock at Hammond's refusal to turn over this information, calling this position "unprecedented" in his experience, which spans over twenty years of legal practice. (Mot. Order Show Cause ¶ 9, ECF No. 112). Szany further called Hammond's conduct "outrageous and contemptuous." *Id.* at ¶ 10. Szany argued that Hammond was ordered to tender to Szany: "(1) complaints against or investigations of Garcia for sexual harassment, sexual misconduct, or sexually-motivated violence toward any person; and, (2) complaints against or investigations of Garcia for violence toward coworkers." *Id.* at ¶ 13. Szany further asserted: "In fact, a close read of

3

Dkt 102 shows that a document with the header 'Internal Affairs File' should have been tendered to Plaintiff nearly five weeks from today's date (January 21, 2019). Nothing but utter recalcitrance describes Defendant Hammond's conduct." *Id.* at ¶ 15.

Szany was unable to support these strong accusations. The Court denied the Motion for Order to Show Cause without prejudice, noting that Szany appeared to conflate the ruling that documents were *relevant* with a ruling that documents must be *turned over*. The Court had not ordered that Hammond must turn over the relevant documents from the internal affairs folder. Instead, the Court first ruled on relevance and later ordered that the relevant documents in Garcia's internal affairs file were shielded from discovery by the law enforcement privilege. The Court ordered that Szany was permitted to refile the motion if she identified relevant documents that were not turned over but should have been turned over under the Court's previous rulings.

Szany refiled the motion, seeking documents that correspond to written entries on the document spanning Bates numbers 364-5. Hammond responded that it had turned over all of the documents that it was required to under earlier orders. The Court held a hearing on the motion on February 1, 2019. At that hearing, the Court reaffirmed that its prior definition of relevance in the preliminary order on the motion for protective order controlled and that accusations of generalized violence committed by Garcia fell outside of this definition. Szany's counsel indicated that "my sense is that any act by Mr. Garcia [by] which he allegedly struck a person or allegedly acted in a volatile way toward a person, any person, would be something that the Plaintiff is entitled to know about." (Feb. 1, 2019 Hr'g Tr. 5:3-6, ECF No. 244). The Court indicated that prior orders "cabin [relevant] 'violence' to two categories, and those are sexually-motivated violence towards any person or violence towards coworkers." *Id.* at 5:13-15. The Court asked Szany's counsel to identify any part of an order issued in this case where the Court adopted Szany's broader definition of

relevance regarding violence. Szany's counsel admitted that "I'm not sure that I'm able to." *Id.* at 5:21. The Court confirmed with counsel for Hammond that all relevant documents from the internal affairs file had been either turned over to Szany or submitted to the Court for *in camera* review. The Court denied the refiled motion, noting that there were procedural deficiencies but ruling on the merits.

On February 11, 2019, Hammond filed a Second Motion for Protective Order, asking the Court to reaffirm prior definitions of relevance and proportionality, forbid deposition questions regarding matters in Garcia's internal affairs file, and prevent questioning into off-duty conduct outside of the workplace between Hammond Police Department officers other than Szany and Garcia. Szany argued that the motion was a veiled motion for reconsideration of the Court's prior orders and that the motion sought to apply internal-affairs-file rulings outside of the internal-affairs-file context.

The filings related to the Second Motion for Protective Order were cited in news coverage of this case that was published on the day that the motion was fully briefed. *See* (Reply Supp., ECF No. 155); (Mot. Rule Show Cause Ex. B, ECF No. 163-2). As discussed further below, Hammond relies heavily on this news coverage in its pending motion for a Rule to Show Cause. On March 5, 2019,[1] the Court granted in part and denied in part Hammond's Second Motion for a Protective Order, finding that the Court's earlier definition of relevance and proportionality remained in effect but also finding that the definition was tied to the specific context of Garcia's internal affairs file and needed to be modified when applied to other contexts, especially those involving allegations of sexual misconduct.[2]

---

[1] This is after the first pending Motion for Sanctions and the pending Motion for Rule to Show Cause were filed.

[2] The Court ultimately ordered:

3.    *Motion Practice on December 14, 2018 Protective Order*

The Court's Protective Order restricting the disclosure of certain documents also led to motion practice, which often failed to comply with local rules. The Court advised the parties that sealed matters may not be submitted to the Court via email, (Minute Order, ECF No. 117), that requests to seal must be in line with the case law of the Seventh Circuit Court of Appeals, the local rules, and the CM/ECF Civil and Criminal User Manual, *id.*, and that a party cannot file material under seal without first seeking leave of Court to seal the filings, *e.g.*, (Order, ECF No. 166); (Minute Order, ECF No. 187); (Order, ECF No. 191).

On February 13, 2019, Hammond filed a Motion for Leave to Disclose Confidential Record. In that motion, Hammond indicated that a document, later identified as bearing Bates number 367A ("Document 367A"), was responsive to a newspaper's public records request but was also subject to the Protective Order in this case. Hammond stated that Document 367A was subject to disclosure in response to a request under Indiana's Access to Public Records Act. The Court granted the request to disclose Document 367A.

---

1.    Plaintiff may seek discovery regarding any allegations that an on-duty or off-duty Hammond Police Department employee committed, against an on-duty or off-duty Hammond Police Department coworker, an act of sexual harassment, sexual misconduct, or sexually-motivated violence;

2.    Allegations of generalized violence—with no connection to the Court's prior finding of relevance—by Hammond Police Department employees other than Garcia are not relevant, but violence between coworkers is relevant if such violence involves or is caused by sexual misconduct between Hammond Police Department employees;

3.    Allegations of generalized violence by Garcia are only relevant if the allegation is of violence toward a coworker, regardless of whether Garcia or the coworker was on-duty at the time of the alleged violence; and

4.    Discovery requests, including lines of inquiry posed to deponents, regarding [the document bearing Bates numbers 364-65] must fall within the Court's definition of relevance as set forth on pages 3-4 of the December 4, 2018 Opinion and Order. (ECF No. 96). Thus, Plaintiff can inquire, for instance, if discipline listed on the document was imposed for sexual misconduct (and, if so, further questions may be asked). But, general inquiries not connected to the Court's articulation of relevance will not be allowed.

(Op. & Order 7-8, ECF No. 168).

### C. Previous Motion for Sanctions

On November 5, 2018, Szany filed a Motion for Sanctions against Hammond for the purported undue delay in turning over audio recordings in discovery. In the motion, Szany wrote, "Defendant Hammond has been served with Requests for Production (RFP) to which the Defendant responded with certain written reports; however, without the accompanying the [*sic*] audio." (Mot. Sanctions ¶ 1, ECF No. 88). Szany did not provide a copy of any request for production, though she represented that she informally requested audio recordings on October 24, 2018. She acknowledged that she received an email from Hammond's counsel in which counsel wrote, "I am happy to make these recordings available to you for review." *Id.* at ¶ 7. This email was sent on October 30, 2018. (Resp. Mot. Sanctions Ex. C, ECF No. 91-3). Hammond countered that Szany never served a specific request for production for the recordings at issue and that it had objected to other requests for production.

The Court denied Szany's motion, noting that she did not file a brief to accompany her motion, and finding that Federal Rule of Civil Procedure 37, which Szany cited in her motion, did not support her request. The Court also found that Hammond's actions did not provide cause for the Court to award sanctions pursuant to its discretion. In the Court's November 29, 2018 Order denying the motion, the Court noted that "the discovery at issue was obtained and made available to requesting counsel within one week of the initial request and on the same day as the meet and confer." (Order 1-2, ECF No. 95). Though no objections or motion to reconsider were filed as to this order, Szany has tried to relitigate the issue through her first pending Motion for Sanctions.

### D. Other Case Filings

Szany submitted multiple filings that failed to comply with the local rules of this district. Szany filed discovery motions on August 23, 2018, August 29, 2018,[3] October 24, 2018, and March 23, 2019. The Court denied all of these motions for various deficiencies regarding the certification requirement of Northern District of Indiana Local Rule 37-1. Szany also twice filed documents manually instead of electronically; electronic filing is required by Local Rule 5-1. *See* (Receipt of Manual Filing, ECF No. 120); (Notice of Manual Filing, ECF No. 141). And, Szany has a pattern of not filing supporting briefs with her motions as required by Local Rule 7-1, *see, e.g.*, (Pl.'s Mot. Strike & Sanctions, ECF No. 233); (Pl's Mot. Sanctions, ECF No. 186); (Mot. Pl. Compel Def., ECF No. 67), though a May 4, 2019 motion complies with this local rule.

One of the discovery motions mentioned above was a motion to take excess depositions. Szany made this request three times. *See* (Mot. Exceed Ten Deps., ECF No. 82); (Mot. Exceed Ten Deps., ECF No. 87); (Mot. Address Deficiencies, ECF No. 153). The first request violated Local Rule 37-1. The Court deemed the second request premature and explicitly noted that Szany was required to take ten depositions prior to seeking leave to take additional depositions. Szany filed her third request prior to taking ten depositions and failed to present argument on the elements of the standard the Court applied in its earlier ruling. Moreover, Szany did not so much as mention the previously ordered requirement to take ten depositions prior to seeking such relief.

### E. Civility and Rule 1

At a hearing on March 7, 2019, the Court discussed the need for civility between the parties. This discussion did not have a noticeable effect. When questioned by the Court at another hearing held less than three weeks later on March 26, 2019, the parties agreed that the mandate in Federal

---

[3] Szany filed two motions on this date.

Rule of Civil Procedure 1 that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding" was not being followed in this case. Fed. R. Civ. P. 1. The Court ordered counsel for the parties "to file a joint status report by next Thursday [April 4, 2019] indicating that they have met, they have conferred, and they have discussed Federal Rule of Civil Procedure 1." *See* (Status Conference Mins., ECF No. 199 (quotation taken from the audio recording of the status conference)). Counsel for the parties were unable to file this relatively simple joint status report and instead filed separate reports. The Court, aware of its own burden under Rule 1 and not wanting to further drive up litigation expenses, excused this failure to file a joint status report.

### F. Pending Motions

Szany filed the first pending Motion for Sanctions on February 26, 2019. Hammond filed a response on March 12, 2019. Szany filed a reply on March 17, 2019. District Court Judge James T. Moody referred this motion to the undersigned for a Report and Recommendation in an opinion and order dated February 27, 2019.  This motion seeks relief based in part on the theory that Hammond failed to turn over Document 367A, which purports to document Garcia's suspension for allegations related to the underlying facts of this case.

Hammond filed its Motion for Rule to Show Cause on February 28, 2019. Szany filed a response on March 13, 2019. No reply was filed. Judge Moody referred this motion to the undersigned for a Report and Recommendation in an order dated April 10, 2019.  This motion seeks sanctions for statements Szany's counsel made to a reporter.

On April 15, 2019, this case was reassigned from Judge Moody to District Court Judge Philip P. Simon.

On May 2, 2019, Szany filed the Motion to Strike and for Sanctions. Hammond filed a response on May 16, 2019. Szany filed a reply on May 22, 2019. Judge Simon referred this motion to the undersigned for a Report and Recommendation in an order dated May 6, 2019.  This motion seeks to strike a supplement filed by Hammond in this case and further argues that the supplement contains exhibits that should have been turned over in discovery.

Szany had filed another Motion for Sanctions on March 17, 2019.[4] After the motion was fully briefed, Szany sought to withdraw the motion on June 4, 2019. The Court granted that request on June 11, 2019.

### G. Hearing

The undersigned held a hearing concerning the first pending motion for sanctions, the now-withdrawn motion for sanctions, and the motion for rule to show cause on April 23, 2019.

1.    *Statements Regarding Plaintiff's First Pending Motion for Sanctions*

At the hearing, Szany reported that Garcia said at his deposition that he received a letter notifying him of the decision to suspend him and that he did not contest that he had, in fact, been disciplined. (Apr. 23, 2019 Hr'g Tr. 10:7-16, 12:16-18, ECF No. 228). Despite this, Szany asserted that her theory of the case against Hammond was that Hammond never actually disciplined Garcia for the alleged incident giving rise to this litigation. Szany reported that there was nothing in the personnel record to show that Garcia was disciplined. When questioned on whether this supposed theory of her case was consistent with her actions in discovery, Szany asserted that she sought "every single document Hammond has to prove that a suspension occurred," *id.* at 11:10, but she did not challenge Hammond's statements that neither paystubs nor payroll records were requested,

---

[4] In this motion, Szany sought sanctions against Hammond because Hammond referred to a document titled "Hammond Police Department Supplemental Report" as a "letter." The "Supplemental Report" referred to itself as a "letter." *See* (Hammond Police Dept. Suppl. Report, ECF No. 185).

*see id.* at 10:25-11:9, 23:5-6. She also stated that "there's no payroll record whatsoever in the personnel jacket." *Id.* at 12:23.

Hammond reported that its counsel could not recall, prior to the production of Document 367A, there being any dispute regarding whether Garcia served the suspension, and counsel indicated that Garcia, Chief of Police Doughty, and Assistant Chief of Police Short testified to Garcia's suspension. Further, Hammond stated that, when asked by the media for a document showing that Garcia served the suspension, Hammond found Document 367A and disclosed it. Hammond acknowledged that due to "a clerical error" Document 367A was not in the personnel file as it should have been, so Hammond "labeled it 367A . . . . That's where it should have been in the personnel file." *Id.* at 22:19-23:3.

The Court sought clarification as to the degree of the initial inquiry Hammond made into whether the personnel record was complete prior to tendering it in discovery. Counsel for Hammond candidly reported,

> We had a copy of what appeared to be the complete file. I can't say that we went through it page-by-page to see if we thought there was something missing. In reviewing it, it did not appear to have anything missing. Most of the file is background information, pictures, what sort of continuing training they've had. . . .
>
> So we obtained it, saw what looked to be a typical personnel file, had no reason to think that there was something that wasn't there.

*Id.* at 26:23-27:12.

2.      *Statements Regarding Hammond's Motion*

Hammond argues in its motion that Szany's counsel made inappropriate out-of-court statements to a reporter. The statements at issue are that (1) Szany believes there is another sexual harassment charge against Garcia, (2) she wants to question Garcia regarding discipline for improper use of a Taser while off-duty, (3) she wants to question Hammond employees about

11

another alleged incident of sexual assault, and (4) Szany's counsel believes that he should be able to conduct discovery on generalized violence.

At the hearing, Hammond agreed that contempt would "flow directly from statements that [Szany's counsel] made that were not authorized by the protective order and were traced back to documents produced by the parties." *Id.* at 42:25-43:5. It also asserted that contempt "would also flow to testimony that was garnered based upon the personnel files and IA files or the documents that are subject to the protective order." *Id.* at 43:6-8.

Szany's counsel stated that the information that led to his first statement came from an outside source and "[a]bsolutely not from any [discovery] document whatsoever." *Id.* at 46:10-11. Szany's counsel stated that the second and third statements were based on rumor. *Id.* at 47:25, 49:24. The fourth statement is Szany's counsel's belief regarding the scope of discovery, so there is no argument it originated from a disclosure subject to the protective order.

At the hearing, Szany's counsel expounded on his comments regarding the Taser, saying, "I don't know if there was an allegation, say, by a male [that] Mr. Garcia put a Taser to his testicles. I don't know if a Taser was used preceding a sexual assault. I don't know if a Taser was used following a sexual assault. I had zero information." *Id.* at 50:17-21. He proceeded to state that "at this point I believe I have more information." *Id.* at 50:22. The Court asked, "what's your reasonable basis for believing that use of a Taser in any way, shape, or form was something that would be admissible at trial?" *Id.* at 53:16-18. Szany's counsel replied:

> Reliable information that was given to me, my own experience as a policeman, my experience in representing hundreds of policemen, a Taser is one of those weapons typically used to touch the testicles. A police officer behaving badly with a Taser wouldn't define the conduct as a sexual assault, but it's certainly a way to send a message to a suspect that, "Hey, you shouldn't have run from me;" "Hey, you shouldn't have cursed at me." It is a reasonable expectation by a lawyer who defends police officers on both sides to expect that a Taser would have been used in a way that would have been defined as sexual.

12

*Id.* at 53:20-54:5. Szany's counsel further stated that he believes, "based on my experience in defending policemen, based on my experience as a police officer," that there are complaints against or investigations of Garcia for sexual harassment involving a Taser. *Id.* at 56:2-8.

Counsel for Garcia stated that "[i]n my 20 years of representing police departments, I've never heard of a Taser being used in a sexual manner, and the Court already *in camera* reviewed [the internal affairs file documents submitted pursuant to the December 4, 2018 Order] and determined there was nothing of a sexual manner." *Id.* at 61:5-8. Counsel also indicated that "[t]here's a spirit of the [Protective] Order" that needs to be enforced, and that Szany testified at her deposition that she was "not aware of any rumors or remarks or allegations against Officer Garcia acting in an improper sexual manner." *Id.* at 61:12-14, 61:19-21.

The Court provided the parties with the opportunity to file supplements to the statements made at the hearing. Szany initially filed her supplement on April 29, 2019, but it was stricken for a filing error. Szany refiled the supplement on May 2, 2019. Hammond filed its supplement on April 30, 2019. Hammond attached payroll records (Exhibit F) and paystubs (Exhibit G) to its supplement.

## ANALYSIS

The Court will address one initial matter before turning to the substance of the motions. The Court will take up Szany's motions first and then turn to Hammond's motion.

### A. Initial Matter: Local Rule Violations

Not for the first time in this litigation, Szany failed to file briefs in support of her motions, thereby violating Northern District of Indiana Local Rule 7-1(b)(2), s*ee* (Op. & Order 1 n.1, ECF No. 95), and Szany failed to file separate Local Rule 37-1(a) certifications, *see* (Order 1, ECF No. 72; Order 1, ECF No. 83). As indicated above, these are far from the first such violations, and

denial on the basis of the violations would be proper. *See Benuzzi v. Bd. of Educ. of Chic.* 647 F.3d 652, 655 (7th Cir. 2011) ("District courts have broad discretion to enforce and require strict compliance with their local rules." (citing *Elustra v. Mineo*, 585 F.3d 699, 710 (7th Cir. 2010))). Although these failures provide a sufficient basis on which to deny the motions, the undersigned recommends that Judge Simon rule on the merits of the motions. However, the Court warns Szany that future motions that fail to comply with the local rules may be stricken or denied, including denied with prejudice. Szany's failure to provide a brief in support of her motions unnecessarily clouds the issues presented and has added to the length of this Report.

### B. First Pending Motion for Sanctions

In her first pending motion for sanctions, Szany argues that sanctions against Hammond are appropriate on three grounds: (1) for "having falsely represented to the Court . . . that [Document 367A] was not a public document"; (2) "for having withheld [Document 367A] for nearly 10 months"; and (3) "for having caused a flurry of motion activity." (Am. Mot. Sanctions 10, ECF No. 159). The Court addresses each of Szany's arguments in turn, as well as her untimely attempt to relitigate the issue presented in her November 5, 2018 Motion for Sanctions regarding the timing of Hammond's disclosure of audio tapes.[5]

#### 1.    Characterization of Document 367A

Szany argues that Hammond represented to the Court that Document 367A was not a public document.[6] In the motion in which Hammond presented Document 367A to the Court, Hammond

---

[5] In reply, Szany requests additional sanctions on a new basis: that Hammond improperly called an exhibit a "letter." That request is improperly raised in a reply brief. Further, the matter was raised in Szany's now-withdrawn Motion for Sanctions, so the Court considers Szany to have abandoned that request. *See also supra* note 4.

[6] Szany also incorrectly assumes that the Court determined Document 367A to be protected by law enforcement privilege. Szany appears to mistake the Court's Protective Order (ECF No. 103), with the Court's *In Camera* Review Order (ECF No. 102), in which the Court determined that certain documents were subject to law enforcement

represented that Document 367A was covered by the Protective Order issued in this case and therefore was a confidential record, but Hammond also candidly informed the Court that the document was subject to Indiana's public records law. *See generally* (Mot. Leave Disclose Confidential R. ¶¶ 1, 3-4, ECF No. 142); *see also* (Protective Order, ECF No. 103). Szany acknowledges that Hammond's counsel, in an email, wrote that Document 367A "is a document covered by the Court's definition of 'Confidential Matter' in the Protective Order." (Am. Mot. Sanctions ¶ 21, ECF No. 159). A review of the record leads the Court to infer that Hammond believed that the document should be turned over pursuant to the records request but also believed that the Protective Order required Hammond to obtain the Court's leave before releasing the document to the public. Hammond did not make any of the misrepresentations that Szany sets forth in her motion. This request for sanctions is without factual support, and the undersigned recommends that it be denied.

2.    *Production of Document 367A*

Szany next contends that Hammond has "withheld documents." A closer reading of the motion reveals that Szany argues not that documents have been withheld (that is, that they were never turned over) but, instead, argues that Hammond took too long to produce Document 367A.[7] Szany asserts that Hammond withheld Document 367A for ten months.[8] This is inaccurate. The

---

privilege. Hammond indicated that Document 367A was subject to the Protective Order and has not represented to the Court that Document 367A is entitled to law enforcement privilege.

[7] Szany also admonishes Hammond because Document 367A is, in Szany's view, unrelated to the document bearing Bates number 367. Szany provides no citation to law on this issue and asks for no relief. "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Hammond stated at the hearing that it labeled Document 367A as it did because "[t]hat's where it should have been in the personnel file." (Apr. 23, 2019 Hr'g Tr. 23:2-3, ECF No. 228). Because Plaintiff has not developed this argument or requested relief on this basis, the Court need not determine whether there is a Rule 34 violation here.

[8] A party must supplement requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

parties agree that the document should have been in Garcia's personnel file. After receiving a request for production for the personnel file, Hammond filed a motion for protective order regarding, among other matters, the request to produce the file because Hammond wanted to make redactions to it. The Court issued its final ruling on that motion on December 14, 2018. Hammond states, without contradiction, that it produced the personnel file on January 7, 2019. Then, Hammond produced Document 367A on February 13, 2019, fewer than six weeks after it produced the personnel file.

At the hearing on this motion, the Court inquired as to Hammond's review of Garcia's personnel file before turning it over in discovery. Hammond reported that the file appeared to be a typical complete personnel file, but Hammond could not definitively state that the report was reviewed page-by-page. (Apr. 23, 2019 Hr'g Tr. 26:23-27:12, ECF No. 228).

Szany has not specifically argued in her motion, reply, or her post-hearing supplement, that Hammond's review of the personnel file was insufficient. In her motion, though, she makes the following statement:

> For persuasive authority, Plaintiff has attached to this filing [*Taylor v. Cook Cty. Sheriff's Office*, No 13 C 1856, 2018 WL 4101510 (N.D. Ill. Aug. 28, 2018)], in which the [c]ourt awards fees, etc. in a matter similar to the Dkt. 144 (367A) saga. Please see the Opinion and Order attached as Ex. 8.

(Am. Mot. Sanctions ¶ 29, ECF No. 159). This general reference to *Taylor* is inadequate to put before the Court the issue of Hammond's review of the file. *Taylor* addressed whether a party made a reasonable inquiry to locate documents responsive to a discovery request . *See Taylor*, No. 13 C 1856, 2018 WL 4101510, at *3. Though it is true some cases stand for the proposition that parties must undertake a reasonable inquiry to ensure responses to requests for productions are accurate, *see, e.g.*, *Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009) (alterations from original omitted) (quoting *Fautek v. Montgomery Ward & Co.*, 96 F.R.D.

141, 145 (N.D. Ill. 1982)), Szany does not develop this argument and Hammond described reasonable efforts that it made to ensure the complete and timely production of documents.

Even if there were a discovery violation, it is unclear how Szany was harmed. Fewer than six weeks passed between the production of the personnel file and the supplemental production of Document 367A. It appears that Hammond made a timely supplement once it discovered that Document 367A was missing from the file. But, even assuming that there was a failure to timely supplement, Szany has not shown herself to be entitled to relief. Rule 37 provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; . . . and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

Substantial justification and harmlessness are matters for the Court's "broad discretion." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011). Explicit findings are not necessary in the Court's order, but the following factors should guide the Court's consideration: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

If there is no harm, then sanctions are not appropriate. Szany argues that she is harmed because she now needs to call or recall witnesses for depositions. (Am. Mot. Sanctions ¶ 27, ECF No. 159). Szany contends that the document was fabricated to conceal Hammond's failure to discipline Garcia. Yet the record lacks any indication that Szany pursued this theory prior to the instant motion for sanctions. This theory was not raised in any of Szany's numerous previous

motions, and Hammond represented that Szany did not so much as request pay stubs or other documents in discovery to prove or disprove Garcia's suspension. (Apr. 23, 2019 Hr'g Tr. 10:25-11:5, ECF No. 228).

Based on the current record, the Court cannot say that Szany was harmed by the delay in turning over Document 367A. Because any failure to timely supplement is harmless, Rule 37 sanctions are not appropriate. Even if Szany had been harmed, Hammond produced Document 367A before discovery closed. That is, Szany had the opportunity to seek to take the deposition that she states that she wants. The fact that belated disclosures occur before the close of discovery certainly does not preclude a finding of harm. *See Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010) (stating, in a case involving delayed disclosure of experts, "[l]ate disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery"). Here, though, there was opportunity to cure the purported prejudice beyond the mere availability of time before the close of discovery—the record shows Hammond *agreed* to a 30(b)(6), albeit somewhat conditionally, to deposition on authenticity of Document 367A on March 11, 2019:

> MR. BEACH: Let me represent this to you: If you want to give me a 30(b)(6) request of what you want on 367A –
> MR. COOPER: I can do that.
> MR. BEACH: – I will consider it so long as it's within the realm of reason. We'll find someone to produce to you that I think would address that –
> MR. COOPER: Okay.
> MR. BEACH: – without regard to our discovery deadline.

 (Rep. Supp. Mot. Extend Disc. Deadline Ex. C at 162:2-11, ECF No. 204-3). Though Szany states that the absence of this deposition harmed her case, there is an on-the-record indication that suggests a possible agreement for that very deposition. This discussion occurred *after* Szany's counsel stated, "I don't know how else – at least initially, other than a motion for sanctions, I don't

know how else to send a message that I have a right and my client has a right to ask someone questions about that document." *Id.* at 161:8-12. Szany's counsel is an experienced litigator. He surely knows he can ask questions by noticing a witness for a deposition, serving interrogatories, or at the very least taking opposing counsel up on an offer to solve a dispute in a reasonable manner. Choosing to proceed directly to a motion for sanctions was a tactical decision, arguably one that was not in accordance with Federal Rule of Civil Procedure 1. The Court has already found that there is no harm, but, assuming *arguendo* that Szany has suffered harm from having not taken this deposition, the harm flows more from this tactical decision than it does from a delay of six weeks in turning over Document 367A. Nothing in Document 367A was new to Szany. Szany seeks relief because she supposedly thinks Document 367A is fake and is further documentation of a suspension that never happened. The undersigned recommends that the request for sanctions on this basis be denied.

3.      *Quantity of Motion Practice*

Szany's final argument is that Hammond should be sanctioned for causing a "flurry" of motion practice. This could be interpreted as a request for sanctions under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions imposed under § 1927 are a matter for the court's discretion. *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081 (7th Cir. 2018).

From October 1, 2018, up to and including February 26, 2019, the date on which the instant motion was filed, there were 86 numbered docket entries. Of these docket entries, 26 are motions: 18 filed by Szany, 7 by Hammond, and 1 by Garcia. Eleven of Szany's motions were denied (four

19

without prejudice), four were granted, one was denied in part and granted in part, one was withdrawn, and one—the instant motion—remains pending. One of Hammond's motions was denied, two were granted in part and denied in part, and four were granted. Garcia's motion was granted in part and denied in part.

Szany is correct that there has been a flurry of motion practice in this case. However, the majority of the motions filed in this flurry are Szany's and the majority of her motions were denied. Szany has not shown that Hammond's attorney acted unreasonably and vexatiously, so there is no basis for § 1927 sanctions.

*4.    Relitigation of Audio Recordings*

The issue of production of audio recordings was initially brought in Szany's November 5, 2018 Motion for Sanctions and was resolved on November 29, 2018, when that motion was denied. Szany raises the specter of this long-resolved issue in the pending Motion for Sanctions, (Am. Mot. Sanctions 1-3, ECF No. 159), the reply to that motion (Reply 1-2, ECF No. 184), and the entirety of her post-hearing supplement, (Pl.'s Suppl., ECF No. 234). This is a settled matter and subject to the doctrine of law of the case, which "establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.); *Williams v. Commissioner*, 1 F.3d 502, 503-04 (7th Cir. 1993); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, pp. 789-90 (1981)). Szany did not file any objection or motion to reconsider the order denying the initial motion for sanctions. Even if the Court were to reopen the matter for reconsideration, Szany has not shown any entitlement to relief.

Szany now identifies requests for production purportedly showing that the recordings should have been turned over, (Am. Mot. Sanctions 2, ECF No. 159), likely in an attempt to correct a deficiency noted by the Court in its order on the November 5, 2018 Motion. However, Hammond filed objections to those requests, (Mot. Strike & Sanctions Ex. 2 at 4, ECF No. 233-2), and Szany did not file a motion to compel. Szany has not shown that her request for the recordings came sooner than October 24, 2018.

Szany also asserts that the recordings were not made available to her on October 30, 2018, as the Court found in its order on the November 5, 2018 Motion. Again, this issue is not properly before the Court. Even if it were, on October 30, 2018, counsel for Hammond wrote to counsel for Szany, "Regarding the audio recordings you requested last Wednesday, we have requested and obtained those recordings. I am happy to make these recordings available to you for review. Please let me know if you would like to review them before the depositions set to take place this Friday," to which counsel for Szany replied, "Cool." (Resp. Ex. C, ECF No. 91-3). Szany faults Hammond for not bringing the recordings to the depositions, but she does not show any communication requesting that Hammond do so. Szany represents that on November 30, 2018, she paid a private detective to go to the office of counsel for Hammond and was given the recordings. There is no reason to believe that there would have been a different result had Szany attempted to retrieve the audio recordings on an earlier date. Szany attempts to paint this as dilatory behavior on the part of Hammond but provides no evidentiary support.

### C. Motion to Strike and for Sanctions

Szany argues in her Motion to Strike and for Sanctions that Exhibits F and G to Hammond's post-hearing supplement should have been turned over in discovery and that Hammond should be sanctioned for withholding the documents and trying to circumvent the Federal Rules of Civil

Procedure. Exhibit F is composed of Hammond Police Department Payroll Clerk records. Exhibit G is composed of Garcia's paystubs from 2017 dated April 7, April 21, May 5, and May 19. Szany asserts that she requested the Exhibit F and G documents on March 30, 2018. Szany does not point to any particular discovery request covering these documents, but she does refer the Court to two exhibits—Hammond's answers to Szany's first set of interrogatories and Hammond's responses to Szany's first set of requests for production.

Szany asks that Hammond's exhibits be stricken from the record and that Hammond be barred from using these exhibits in this litigation. Szany cites no specific case law and makes only passing reference to applicable rules and "7th Circuit and SCOTUS' pronouncements."[9] Szany reports that Hammond's conduct in not turning over these documents sooner is "outrageous," (Mot. Strike & Sanctions ¶ 3, ECF No. 233), but none of the interrogatories Szany points to ask specifically for payroll information showing that Garcia served a suspension, and interrogatories, in contrast to requests for production, would not call for the underlying documents.[10] In the

---

[9] Without any citation to the record, Szany refers to "the relevant cases cited ad nauseam by Plaintiff's counsel in many past filings in the instant case." (Mot. Strike & Sanctions 4, ECF No. 233).

[10] The interrogatories are as follows:

**Interrogatory No. 1:** Please provide a roster identifying persons who were City of Hammond Police officers on October 19, 2016.

**Interrogatory No. 2:** Please identify by name, the complaining party, as well as the alleged perpetrator, germane to formal and informal complaints of sexual harassment\assault\battery made by anyone against a Hammond Police officer or the Hammond Police Department, for the period January 1, 2008 to present.

**Interrogatory No. 3:** Please identify any and all Hammond Police officers who have been censured or reprimanded by the Hammond Police Department, for alleged sexual misconduct to include batteries, harassment, and assault.

**Interrogatory No. 4:** Please identify any and all City of Hammond Police officers who have been censured or reprimanded, by the City of Hammond Police Department, for non-consensual contact with another officer, or a civilian (to include prisoners).

**Interrogatory No. 5:** Please identify any and all Hammond Police Officers investigated for and\or reprimanded for misuse of IDACS for the period March 30, 2008 to present.

answers to the interrogatories, Hammond disclosed that Garcia received a suspension for the incident that gave rise to this litigation. This is the pertinent information contained in Exhibits F and G, and the interrogatory answers show that the information was disclosed to Szany prior to the post-hearing supplement. Further, Szany clarified that the exhibits contain "namely documents as opposed to information" that she had previously requested. (Mot. Strike & Sanctions ¶ 2, ECF No. 233). There is no basis for sanctions or striking the exhibits based on the interrogatories, especially when Szany's argument is that *documents*—and not information—were withheld.

Similarly, in the first set of requests for production, there is no specific request for payroll records or paystubs showing that Garcia served the suspension. The only request for which there is no objection is Request No. 12: "All Documents showing sexual harassment training received by Officer Ja[im]e Garcia." (Mot. Strike & Sanctions Ex. 2, ECF No. 233-2). To the extent any of the other requests for production could be considered to cover the documents in Exhibits F and G, Hammond filed objections, and Szany did not pursue the matter through a motion to compel or other motion during the discovery period.

---

**Interrogatory No. 6:** What is the date of the last sexual harassment training session delivered and received by one or more City of Hammond Police Officers. Please include answers to the following: a) Who conducted the training and with what agency or business was the trainer associated? b) Where was the training held? c) What was the duration of each training session? and, d) Who attended the training (by specific names)?

**Interrogatory No. 7:** For the period October 1, 2014 to October 19, 2017, what is the date(s) of the sexual harassment training session delivered and received by one or more City of Hammond Police Officers. Please include answers to the following: a) Who conducted the training and with what agency or business was the trainer associated? b) Where was the training held? c) What was the duration of each training session? and, d) Who attended the training (by specific names)?

**Interrogatory No. 8:** Identify each and every person and entity who has information as to the instant case or its allegations; as well anyone Defendant will call as a witness at trial.

**Interrogatory No. 9:** If there was an investigation of the allegations for which the instant lawsuit is germane, identify the person(s) who conducted the investigation.

(Mot. Strike & Sanctions Ex. 1, ECF No. 233-1).

Szany represents that her theory of the case and legal strategy would have been different if Exhibits F and G had been disclosed in response to the discovery requests. Szany purports to have spent nearly $20,000 in costs and accrued the equivalent of approximately $144,556 in billable hours, and she asserts that the resources would have been allocated differently had she known of these documents showing that Garcia served the suspension. If Szany was building a case based on the theory that Garcia did not serve the suspension, then logic dictates that inquiries would have been made into this topic during discovery. She could have sought payroll records, asked germane questions at depositions, or served a request to admit that Garcia had not served his suspension. If Szany's theory of the case is as she states, then these (or similar) discovery requests or a motion to compel would be expected. No such discovery requests were presented in the extensive briefing and hearing on this matter, other than catch-all requests to which Hammond objected. And, despite displaying a willingness to file motions to compel and motions for sanctions on much less consequential grounds, no such motions were filed on matters going directly to her purported theory of the case. Szany has shown no basis for an award of sanctions. Though Szany also asks the Court to strike Exhibits F and G, she does not provide any ground for striking the documents other than her failed bid for sanctions. Therefore, the Court recommends the denial of this motion.[11]

### D. Motion for Rule to Show Cause

Hammond argues that Szany has shown "open defiance of the Court's Orders," arguing that she "went to the press and disclosed Confidential Matters because she did not get the relief

---

[11] Szany proceeds to again raise issues concerning Document 367A, but those arguments are addressed elsewhere in this Report. Szany also takes issue with Hammond filing deposition excerpts openly on the docket, but that matter is not properly before the Court, and Szany requests no relief on the issue. Szany further represents that there is a Federal Rule of Civil Procedure 26 violation, but that she will bring that dispute in a motion to compel. She filed such a motion on May 4, 2019, and the Court has ruled on it.

she wanted from the Court." (Def.'s Br. Supp. 6, ECF No. 164). Hammond contends that "[t]his public discussion of Garcia's disciplinary history is a flagrant violation of the Court's Protective Order." *Id.* at 7. Hammond requests a contempt finding, dismissal for discovery violations, dismissal for bad faith conduct in litigation under the Court's inherent authority, and a finding that Szany's counsel violated Indiana Rule of Professional Conduct 3.6. The Court will list the specific statements at issue and address each basis presented for Hammond's requests below.

1.      *The Statements at Issue*

The statements at issue are connected to two articles, one appearing in print and one appearing online, both written by the same reporter and published by the same news organization. The articles bear the headlines "Cops Want Records Private" and "Hammond Seeks Concealment of Records in Female Officer's Sex Harassment Lawsuit." (Mot. Rule Show Cause Exs. B, C, ECF No. 163-2, 163-3). These articles were published on the day Hammond's Second Motion for a Protective Order was fully briefed, and both articles referred to that motion. The motion sought to shield information from discovery and extend the scope of earlier rulings in this case, and was granted in part and denied in part. While this timing is not dispositive of the instant motion for a rule to show cause, it is necessary to consider the statements in the context of the issues before the Court (and on the public docket) at the time Szany's counsel communicated with a reporter. This is especially true because, as discussed in more detail below, the operative legal analysis turns in large part upon whether statements Szany's counsel made appear in the public record.

Hammond first argues that "[Szany] told a reporter she believes there is another sexual harassment charge against Garcia" (Def.'s Br. Supp. 6, ECF No. 164). A reporter emailed Hammond that "my editors would like a story about this complaint, given the recent court filings in which Cooper motioned to force Hammond [PD] [to] disclose all of Garcia's disciplinary file.

(He said he believes there's another sexual harassment charge against him.)." (Mot. Rule Show Cause Ex. A at 1, ECF No. 163-1). In context, it is unclear whether Szany's counsel made this statement directly to the reporter or whether the reporter was summarizing Szany's counsel's arguments in a motion. At the hearing, Szany's counsel did not dispute that he "made some comments to a member of the press that Mr. Garcia may have additional sexual harassment claims." (Apr. 23, 2019 Hr'g Tr. 48:5-8, ECF No. 228) This statement that Szany's counsel admits to saying is very similar to a statement made in Szany's response to Hammond's Second Motion for a Protective Order. (Pl.'s Resp. 10, ECF No. 140 (mentioning a "reasonable mind" might wonder "if there is a specific incident or numerous incidents of alleged sexual violence perpetrated by Officer Garcia")). On this record, the Court cannot find that Szany's counsel made a statement outside of what was contained in the public record.

Hammond takes issue with a second statement where "[Szany] disclosed to the press that she 'wants to question employees further as to whether Garcia was disciplined for the alleged improper use of a Taser while off duty.'" (Def.'s Br. Supp. 6, ECF No. 164). The internal quotation from the above statement is in the article published in the newspaper. (Mot. Rule Show Cause Ex. B at 2, ECF No. 163-2). The Court is unaware of this statement being in the public record prior to Szany's counsel's statement.

And, a third statement Hammond points to is "Szany's desire to 'question employees about an incident in which one or more (unnamed) Hammond officers allegedly sexually assaulted three Hammond female officers.'" (Def.'s Br. Supp. 6, ECF No. 164). This statement is in the newspaper article, but the article explicitly states that it is from a court filing—Szany's response to Hammond's Second Motion for Protective Order. (Mot. Rule Show Cause Exs. B, C, ECF No. 163-2, 163-3). The statement from the newspaper is in the public record on page 8 of Szany's

response: "three Hammond females [*sic*] police officers were allegedly sexually assaulted by one or more male Hammond Police officers. (Pl.'s Resp. 8, ECF No. 140). Hammond itself alluded to an alleged incident between Hammond officers in its brief in support of the Second Motion for Protective Order. (Def.'s Br. Supp. 6 ECF No. 138 ("[I]t is expected that plaintiff's counsel may depose a female HPD officer and ask her questions about an alleged off-duty occurrence purporting to be of a sexually harassing nature and initiated by a male HPD officer other than Corporal Garcia.")).

> Finally, Hammond stresses:
>
> Szany's counsel informed the newspaper that he felt he should be able to conduct discovery of acts of generalized violence because "he believes admitting into evidence on-duty and off-duty incidents considered violent or sexual in nature involving Garcia and/or other officers would add merit to his client's case by showing Hammond knew of various allegations but did little to discipline those involved."

(Def.'s Br. Supp. 6-7, ECF No. 164). The internal quotation from the above statement is in the article published in the newspaper. (Mot. Rule Show Cause Ex. B at 2, ECF No. 163-2). This final statement generally mirrors arguments Szany presented in response to Hammond's Section Motion for a Protective Order. The Court finds that Szany's statement was contained in the public record.

### 2.   *Contempt*

A finding of contempt is appropriate only where the requesting party has shown, by clear and convincing evidence, that "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)).

Regarding the first element, Hammond clarified at the hearing that its request for a contempt finding is based on the December 14, 2018 Protective Order. The Protective Order defined "Confidential Matter" to include

> information that may be subject to discovery in this action and pertaining to . . . employment, medical, and personnel files, or other information of a sensitive or non-public nature regarding Plaintiff, Defendants, non-party employees of the City of Hammond and its police department; [and] any personal information that would identify persons who have made complaints of misconduct to the City of Hammond, Hammond Police Department (including its Internal Affairs Division) . . . .

(Protective Order ¶ 1, ECF No. 103). The Court ordered that Confidential Matter could not be disclosed without prior written consent of the designating party unless the disclosure was to a member of one of enumerated categories of persons. *Id.* at ¶ 3.

At the hearing, Szany's counsel stated that the information that led to the first statement discussed above (he believes that there is another sexual harassment charge against Garcia) came from an outside source and "[a]bsolutely not from any [discovery] document whatsoever." (Apr. 23, 2019 Hr'g Tr. 46:10-11, ECF No. 228). Szany's counsel said his second statement (he wants to question Garcia regarding discipline for improper use of a Taser while off-duty) and third statement (he wants to question Hammond employees about another alleged incident of sexual assault) were based on rumor. *Id.* at 47:25, 49:24. Szany's counsel is an officer of the Court with a duty to not make false statements to the Court. S*ee* Ind. R. Prof'l Conduct 3.3(a)(1).

Though it is possible that Szany or her counsel learned of these matters from the stated sources and then had these matters corroborated by Confidential Matter turned over in discovery, it would be unfair to consider the Protective Order to be an *unambiguous* command forbidding disclosure in such a scenario. In light of Szany's counsel's representations of the origins of the information behind his statements, Hammond has not presented clear and convincing evidence that Szany's counsel violated the Protective Order.

Szany's counsel's other statement—that he believes that he should be able to conduct discovery on generalized violence (despite the Court's ruling that generalized violence is outside of the scope of discovery in this case)—is based on his disagreement with the Court's ruling on relevance. This statement is about matter in the public record—the Court's prior orders—and not about Confidential Material. Hammond has not identified an unambiguous command that Szany's counsel violated in making this statement, so a finding of contempt is not appropriate. Because these are statements of what Szany and her counsel want to be able to do in discovery and do not violate unambiguous commands in the Court's Protective Order (the only order identified by Hammond), the elements for contempt have not been met.

Hammond agreed that the disclosed information must flow from discovery to be protected by the Protective Order, but it has not connected a single command in the Protective Order to any of Szany's counsel's statements. The evidence is not clear and convincing that Szany or her counsel should be held in contempt. The undersigned recommends that the request for a show cause order on this basis be denied.

3.      *Discovery Violations*

District courts in the Seventh Circuit Court of Appeals have held that a violation of a protective order is sanctionable under Rule 37(b). *See, e.g.*, *Marine Travelift Inc. v. ASCOM SpA*, No. 14-C-443, 2015 WL 461549, at *1 (E.D. Wis. Feb. 3, 2015); *Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03 C 5684, 2004 WL 1459478, at *3 (N.D. Ill. June 29, 2004). The Seventh Circuit Court of Appeals has not specifically addressed the issue, but it suggested that Rule 37(b) is the proper vehicle for such sanctions. *See Scott v. Chuhak & Tescon, P.C.*, 725, F.3d 772, 778 (affirming imposition of "discovery sanctions" for violating the terms of a protective order); *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) ("As the file of Terry

Erickson was not marked 'Confidential,' Angelita Greviskes was not technically in violation of the protective order and as such, could not be held to have violated Rule 37.").

Under Rule 37(b)(2), when a party violates a discovery order, the Court "may issue further just orders," which may include (i) directing that matters be taken as established for the purposes of the action, (ii) prohibiting a party from supporting or opposing the matters at issue, (iii) striking pleadings in whole or part, (iv) staying the proceedings pending compliance, and (v) dismissing the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A). Additionally, instead of or in addition to these orders, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

As noted in the analysis on contempt, Szany's counsel represented to the Court that the information behind his statements to the media comes from an outside source and from rumor. An unambiguous command is needed for a finding of contempt. The text of Rule 37(b)(2)(A), however, requires only that a party "fails to obey an order" without explicitly requiring an unambiguous command for sanctions to issue. Fed. R. Civ. P. 37(b)(2)(A). However, even if there is no requirement for an unambiguous command, the Protective Order governs information released in discovery, not information from outside sources or rumors. The undersigned once again finds that statements based upon outside sources and rumor do not violate the Protective Order entered on December 14, 2018, and recommends that this request be denied.

4.    *Inherent Power*

The Court has the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32,

45-46 (1991) (internal quotation marks and citation omitted). "It has long been understood that federal judges have a common-law power (sometimes called an inherent power) to impose sanctions on parties that needlessly run up the costs of litigation." *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1027 (7th Cir. 2019) (citing *Chambers*, 501 U.S. 32). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Hammond argues that "[c]ollaboration between counsel and the press as to information affecting the fairness of a trial is not only subject to regulation but is highly censurable and worthy of disciplinary measures." (Def.'s Br. Supp. 7, ECF No. 164) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)). In *Sheppard*—a habeas corpus case arising after a murder conviction—a local newspaper had printed multiple articles, including editorials opining as to Sheppard's guilt. 384 U.S. at 338-42; *see also Margoles v. U.S.*, 407 F.2d 727, 732 (7th Cir. 1969) ("The publicity [in *Sheppard*] was overwhelming in both quantity and prejudicial content, and it continued for months up to and during the trial itself. The news media went far beyond their reporting function and called upon public officials, the judge, and the jury to convict the defendant in the name of 'justice.' Moreover, the many appeals to the trial court brought by defense counsel to take steps to protect the defendant's right to a fair trial were all but ignored by the trial judge (who, along with the prosecutor, was running for judicial office at the time).").

Here, the February 19, 2019 article is a far cry from the relentless media coverage in *Sheppard*. This matter is not set for trial, and the media coverage of this case is of a different character and magnitude of the coverage in *Sheppard*. *Sheppard* does not mandate sanctions here.

31

It would be speculative at best to suggest a potential juror would remember an article from February of 2019. If potential jurors do indicate that they remember any news coverage, then that can be addressed at *voir dire.* The undersigned recommends that this request for sanctions be denied.

5.    *Indiana Rule of Professional Conduct 3.6*

Hammond also refers the Court to Indiana Rule of Professional Conduct 3.6(a), which provides:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Ind. R. Prof. Conduct 3.6(a).[12] "Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial" is rebuttably presumed to be a statement prohibited by Rule 3.6(a). Ind. R. Prof. Conduct 3.6(d)(5). However, statements based on matters in the public record are protected by the safe harbor provision in Rule 3.6(b)(2). *In re Brizzi*, 962 N.E.2d 1240, 1247 (Ind. 2012). For the purpose of the safe harbor provision, matters are in the public record if they are in "public government records, i.e., the records and papers on file with a government entity to which an ordinary citizen would have lawful access." *Id.* (citing *Attorney Grievance Comm'n v. Gansler*, 835 A.2d 548, 567-69 (Md. 2003)). "On file," the *Brizzi* court clarified, "does not mandate such formalities as file stamping or entry on a case docket," but, to qualify for the protection of the safe

---

[12] "Indiana's Rules of Professional Conduct . . . govern the conduct of those practicing in the [Northern District of Indiana]." N.D. Ind. L.R. 38-5(e).

harbor for public records, "a lawyer may not provide information beyond quotations from or references to the contents of the public record." *Id.* (citing *Gansler*, 835 A.2d at 569).

The Indiana Supreme Court found a violation of Rule 3.6 when an attorney "caused to be published in several newspapers a letter which stated his client had committed no crime, criticized the prosecutor's decision to retry the case, and mentioned that his client had passed a lie detector test." *In re Litz*, 721 N.E.2d 258, 258 (Ind. 1999). Similarly, an attorney went beyond the public record safe harbor provision with "statements that [the attorney] would not trade all the money and drugs in the world for the life of one person, let alone seven, that [the criminal defendant] deserved the ultimate penalty for this crime, that the evidence was overwhelming, and that it would be a travesty not to seek the death penalty." *In re Brizzi*, 962 N.E.2d at 1247.

Hammond asserts that Szany's counsel tainted the jury pool through his comments to the media and that reasonable jurors reading the news articles would side with Szany and against Hammond regarding whether Hammond "is hiding evidence of serial sexual harassments." (Def.'s Br. Supp. 7, ECF No. 164). Rule 3.6, however, provides a safe harbor for matters that are in the public record. As discussed above, the Court has found that only one statement—regarding Garcia's alleged improper use of a Taser—was not in the public record prior to the articles' publication. Of this statement, Szany's counsel said at the hearing, "I don't know if there was an allegation, say, by a male [that] Mr. Garcia put a Taser to his testicles. I don't know if a Taser was used preceding a sexual assault. I don't know if a Taser was used following a sexual assault. I had zero information." (Apr. 23, 2019 Hr'g Tr. 50:17-21, ECF No. 228). He further stated that "at this point I believe I have more information." *Id.* at 50:22. Szany's counsel indicated that his basis for believing that evidence regarding the use of a Taser would be admissible at trial is:

> Reliable information that was given to me, my own experience as a policeman, my experience in representing hundreds of policemen, a Taser is one of those weapons

typically used to touch the testicles. A police officer behaving badly with a Taser wouldn't define the conduct as a sexual assault, but it's certainly a way to send a message to a suspect that, "Hey, you shouldn't have run from me;" "Hey, you shouldn't have cursed at me." It is a reasonable expectation by a lawyer who defends police officers on both sides to expect that a Taser would have been used in a way that would have been defined as sexual.

*Id.* at 53:20-54:5. Szany's counsel further stated that he believes, "based on my experience in defending policemen, based on my experience as a police officer," that there are complaints against or investigations of Garcia for sexual harassment involving a Taser. *Id.* at 56:2-8. Szany's counsel also suggested that these allegations were recorded in a manner that should have resulted in Hammond turning over additional discovery, but he said he was not "pushing" that at this point because he had no need to do so. *Id.* at 55:3-10.

The ultimate question of admissibility is for another day, and it is in the interest of all parties to this litigation to not further draw out discovery disputes. However, as it stands, the Court is left with an explanation of Szany's counsel's comments that suggest not only that there is reason to believe a Taser was used, but that it was used in a sexual manner. The accusation, coupled with counsel's comments suggesting there are discoverable records that were never disclosed, cannot simply lay as the record currently stands. Szany's counsel may have appropriately left out information to protect a valid privilege, but it is recommended that the Motion for a Rule to Show Cause should be granted to the extent that counsel is required to submit an affidavit—*ex parte* and under seal, if necessary. The affidavit should explain his basis for making the statement regarding the Taser to the reporter, the grounds on which he believes, or believed, such a statement may be admissible at trial, and, in the event that the statement is deemed likely to be inadmissible as evidence in trial, any grounds on which he believes, or believed, that the statement would not create a substantial risk of prejudicing an impartial trial.

Thus, the undersigned recommends that a show cause order issue regarding the statement about the Taser and that no show cause order issue regarding the other statements because those statements are protected by the professional rule's safe harbor provision.

## CONCLUSION

Based on the foregoing, the Court hereby **RECOMMENDS** that Judge Simon **DENY** the Amended Motion by Plaintiff for Sanctions Against Defendant Hammond and Its Attorneys [DE 159], **DENY** Plaintiff's Motion to Strike and for Sanctions [DE 233], and **GRANT in part** and **DENY in part** Defendant City of Hammond's Motion for Rule to Show Cause Why Plaintiff Should Not Be Held in Contempt [DE 163].

The Court **RECOMMENDS** that Judge Simon **ORDER** Szany's counsel to **SHOW CAUSE** and that Judge Simon **ORDER** Szany's counsel to file an affidavit specifically setting forth the following regarding the statement that Garcia may have improperly used a Taser while off-duty:

1. Whether a statement to this effect was in the public record prior to February 19, 2019, and, if so, where the statement is found;
2. The grounds upon which he based the statement and any potential basis for the admissibility of such allegations at trial; and
3. Any grounds upon which he believes, or believed, that the statement does not create a substantial risk of prejudicing an impartial trial.

The Court further **RECOMMENDS** that Szany's counsel be permitted to file the affidavit *ex parte* if necessary to protect a valid claim of privilege.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902,

904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 3rd day of July, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT