UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DENISE SZANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-74-PPS-JPK |
| | ) | |
| JAIME GARCIA, and | ) | |
| CITY OF HAMMOND, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Denise Szany, a Corporal with the Hammond Police Department, has sued the City of Hammond and Jaime Garcia, a fellow Corporal in the Hammond Police Department. The lawsuit stems primarily from an incident in October 2016 in which Garcia grabbed and held Szany by her vest while they were at the station. A few minutes later, when Szany went to get something from her locker, Garcia came up behind her and slapped her on the buttocks with an open hand. Szany has sued Garcia under state law for battery and false imprisonment and has brought Title VII claims for sexual harassment and retaliation against the City.

Both defendants have moved for summary judgment. Szany and the City have also filed a variety of ancillary motions in connection with summary judgment, including motions to strike and a motion to amend the complaint (for the seventh time). As outlined below, I will grant and deny some of these motions and will also overrule Szany's objections to the Magistrate Judge's order on various motions to seal. In the

end, I will grant summary judgment in favor of the City. The claims against Garcia, all of which are state law claims, will be dismissed without prejudice to be pursued in state court if Szany so chooses.

## Background

Denise Szany is an officer with the Hammond Police Department and has been one since 2006. Before that, she worked in the Lake County Sheriff's Department for several years and is thus a seasoned law enforcement professional. Defendant Jaime Garcia was likewise an officer with the Hammond PD at the time of the events in question and, like Szany, held the rank of Corporal. He was hired by Hammond in 2008 but is no longer on the force. And while the parties have directed me to various other points in time, some more relevant than others, and a plethora of additional facts, the key events in this case took place in October 2016 and the weeks following. They remain relatively straightforward. What's more, the key facts are largely undisputed, but I have noted the parties' different versions or the different inferences they ask me to draw where necessary. Here's what happened.

Around 11:00 PM on October 19, 2016, Szany entered the briefing room at the police station to sign out her patrol car for the night and begin her shift. Garcia was in the briefing room, along with several other police officers. Garcia previously loaned his flashlight to Szany, and Garcia apparently noticed that she was wearing it in her gun belt that night. Unprovoked and without saying anything, Garcia went up to Szany and grabbed her by the collar of her vest. She told him to "get your hands off me" as he

refused to let go, and she shoved Garcia as she backed up through a doorway. She apparently then said "Don't touch me" to Garcia, at which point he apparently decided to double down and reached at Szany's gun belt, where the flashlight was. Szany then responded to the effect of "Don't grab my shit … What? Do you want your flashlight back?" Once they had exited the briefing room, it seems Garcia let go of Szany. This entire incident took place in under a minute. And while Szany certainly did not appreciate Garcia's unwanted touching, she testified that there was nothing overtly sexual (in the sense of a proposition) about the encounter from her perspective. [DE 309-1, Szany Dep. Tr. 83-84, 87, 93-94, 107-109.] But no party disputes the fact that Garcia grabbed Szany without provocation or her explicit consent—although Garcia maintains it was only "horseplay" between the two of them. [DE 309-2, Sgt. Mosier Rpt. at p. 4.]

Minutes later, after things had seemingly calmed down, Szany re-entered the briefing room to get her body camera from her locker. [DE 309-1, Szany Dep. Tr. 129.] As she was turned away from him, Garcia walked up behind Szany and struck her on the right buttock with an open hand. [*Id.* at 130.] He slapped her. Garcia then ran out of the room. [*Id.* at 131.] There's a dispute between Szany and Garcia about what words were exchanged between the two after the slap, but the dispute about the exact language used isn't particularly material. Szany testified that she said, "Are you kidding me?" [*id.* at 136] and then "I'm going to sue you," "I'm going to sue your ass off," or words to that effect [*Id.* at 150.] Garcia and other officers present reported that as

he slapped her, Garcia said, "good game" and that Szany responded that she "would pay off her mortgage after she contacts her lawyer," but Szany denied that Garcia ever said, "good game." [DE 309-2, Sgt. Mosier Rpt. at p. 3; DE 309-1 Szany Dep. Tr. 134.] In any event, it is undisputed that Garcia struck Szany on the rear end with an open hand, removed his hand shortly after striking her, and then ran out of the room.

At her deposition, Szany testified that she had not been subjected to any sexual harassment prior to the events of October 19, 2016. Furthermore, she testified that since October 19, 2016, she had not experienced any instances of sexual harassment from Garcia, or anyone else within Hammond PD. That said, she did say there was a culture of "joking" on the force between officers. It would occasionally include physical contact, such as a nudge or light punch, and Szany testified that she would sometimes participate; although, she testified she often wasn't in the mood. In that vein, she testified to a prior incident in which she and Garcia touched one another (he grabbed her knee or legs and she punched him in the arm) after which she informed a supervisor that Garcia was "annoying." [DE 309-1, Szany Dep. Tr. 55-56, 58-60, 73, 82.] She never filed a formal complaint or followed up on her verbal complaint that Garcia was annoying. In another incident, Garcia asked Szany if she thought she was "too good for him" and then walked shoulder to shoulder next to her waiting for an answer. But she testified she did not perceive the interaction to be sexual, or even harassment at the time, and that she did not report it. [DE 307-1, Szany Dep. Tr. 58-60.] But she testified that the October 2016 incident when Garcia struck her backside was different.

-4-

[*Id.* at 171.]

On October 20, the night after the altercation, Szany reported what happened between her and Garcia to Sergeant Tom LaPosa, the acting supervisor on duty. [DE 309-1, Szany Dep. Tr. 248-249.] LaPosa informed her he would need to take the issue up the chain of command within Hammond PD, to Lieutenant Tichy, who was not at the station that night. [*Id.* at 250.] Szany testified she felt Sgt. LaPosa should have immediately reached out to Lt. Tichy that night, but to her knowledge, he spoke with him the following day. [*Id.* at 251.] Szany likewise met with and told Lt. Tichy about the incident the following night when both were at the station. [*Id.* at 262.] Lt. Tichy told her that he was going to contact Garcia's direct supervisor (Lieutenant Berdine) and report the matter to Captain Jeff Long. Lt. Tichy later asked Szany to file a formal supplemental report. [*Id.* at 264.]

A formal investigation commenced thereafter. Garcia was notified by the Chief of Police that he was the target of an investigation on October 24, 2016. [DE 309-2 at 29, Ltr. to J. Garcia.] Captain Long directed the lieutenants in charge of each shift to direct Garcia to have no contact with Szany and to ensure that the two of them did not work the same shift. [DE 309-5, Aff. of J. Long.] Sergeant Anthony Mosier undertook the lead role in investigating the incident. Throughout November 2016, Sgt. Mosier met with and interviewed the officers who were present in the briefing room on the night in question. [DE 309-2, Rpt. of Sgt. Mosier.] That included meeting with Szany first on October 26 for an initial meeting and then on November 1 to conduct a full interview.

[*Id.* at 25.] Sgt. Mosier then prepared a report which was signed and dated November 29, 2016. The report concluded that Garcia's conduct violated Rules 16.1 and 16.2 of the Hammond PD Rules and Regulations and Standard of Conduct, both of which relate to officer conduct and professionalism. [*Id.*]

At her deposition, Szany testified that she had no criticisms of the investigation as it was originally handled. [DE 309-1, Szany Dep. Tr. 264-65.] But in her opposition to summary judgment, she raises numerous issues stemming from the investigation and its results, including an argument that Garcia's suspension was not valid because it did not comply with certain laws or regulations. Szany focuses most of her attention on the sufficiency of the punishment that Hammond PD doled out to Garcia. Szany points to payroll records which she says show Garcia could make up the time he lost from his paycheck during the suspension and that he may have even worked one of the days he was supposedly on suspension. She likewise points out that while Sgt. Mosier's investigation concluded that Garcia violated the Hammond PD rules and regulations in November 2016, the dates for Garcia's suspension were not set out until February 2017 (after Szany filed her lawsuit). Deputy Chief Short testified at his deposition that he did not know when he received Sgt. Mosier's report. [DE 313-2, Short Dep. Tr. 17-22.] He testified he was unsure when he had conversations with Captain Long or Chief Doughty because he took time off for the Thanksgiving and Christmas holidays, as well as deer season around the same time. [*Id.*] But it seems undisputed that those conversations did take place and that action against Garcia was taken by Deputy Chief

Short.

Szany further questions Hammond's response to the incident by suggesting that Garcia did not serve the five-day suspension for his violation until March 27, 2017, and that it was served intermittently between March 27 and May 23. [DE 231-6.] The dates of the suspension were settled on February 27, 2017, which as Szany notes was 12 days *after* she filed her lawsuit. Presumably the inference she's asking the Court to make (her rather convoluted briefing is not helpful on this point), is that Garcia only actually served his suspension because she sued the City. She also points that Garcia's suspension was "invalid" because it violated a 48-hour rule regarding suspensions that she fails to develop in her briefing with any real clarity. She further states that despite April 22, 2017 being a proposed date of Garcia's suspension, he worked that day as a police officer. I include these facts because they form a large part of Szany's brief, but as discussed below, have little to no legal bearing on the result in this case.

Szany also points me to other inappropriate (to say the least) actions by Garcia against other women who were not members of the Hammond PD.[1]  One thread of evidence relates to allegations between Garcia and his ex-wife, culminating in his ex-wife obtaining an order of protection against Garcia in October 2014. His wife also has

---

[1]  Szany submitted 60 exhibits, totaling well over a thousand pages, in connection with her opposition to summary judgment. The Court has reviewed the cited portions of that evidence but is admittedly left somewhat in the dark by Szany's counsel's failure to provide context for many of the quoted portions. That has made it difficult to understand relevance of many of the "facts" alluded to by Szany in her briefing.

stated, albeit not in testimony under oath, that Garcia was physically abusive towards

her. As a result of the order of protection, Garcia was stripped of his police-issued

firearm and police powers for one day. Thus, Hammond had at least some knowledge

of at least some of Garcia's wife's allegations when they happened. Szany also spends

large portions of her brief detailing Garcia's inappropriate behavior towards two young

women who participated in a police "ride along" with Garcia that occurred in spring

2019, well-after this lawsuit was filed and more than two years after the incident

between Szany and Garcia. Garcia was alleged to have spoken inappropriately about

sex with the two young women (one of whom was a minor) and allegedly touched

them on their legs, buttocks and chest during the ride along. As a result of those

allegations, Garcia resigned from his job. But there's no real connection between the

events and Szany. Accordingly, I need not go into any further detail about either of

these incidents because they do not involve Szany, and thus, as discussed later in the

opinion, they are not material to the issues before me on summary judgment.

Szany also brings up allegations of inappropriate conduct by other Hammond

police officers, none of which involves Garcia or Szany. One incident involved explicit

text messages between officers, but without any connection to this case aside from the

fact they involved Hammond police officers. Another involved an incident between two

completely different police officers that occurred prior to the events in this lawsuit, but

again did not involve either Szany or Garcia.

And while that covers the bases on the events relating to the sexual harassment,

battery and false imprisonment allegations in this case, there's another thread to the story that must be explored. In January 2016, or nine months before the main incident in this lawsuit, Szany was involved in a car accident with a civilian. She was on the job and driving her squad car at the time. On April 21, 2017, (or roughly six months after the incident involving Garcia and two months after this lawsuit was filed), Szany and Hammond were sued by the driver of the other vehicle in state court.

Apparently, the attorneys for Hammond in the case before me represent the City in most of its litigation. But that wasn't possible in the car accident because those lawyers were already defending the City in this lawsuit. The City hired a different attorney, unaffiliated with its counsel in this case, to represent the City and Szany jointly in the car accident case. But Szany was not happy with the City's choice. Nothing before me indicates that the attorney was incompetent or performed his job poorly. Instead, Szany told the City and her lawyer at the time that he had a conflict of interest and he could not represent both her and the City in the traffic accident case because she was suing the City in this case. She wanted her own attorney who would represent her in the traffic accident lawsuit and for the City to be represented by a different attorney.

After Szany and the attorney could not work out their differences, specifically him agreeing only to represent only her *or* the City, but not both, the attorney withdrew his appearance in November 2017 per her request. Szany then filed a complaint with the Indiana Supreme Court Disciplinary Commission shortly thereafter against that attorney. It's not entirely clear what happened next (or what the result of Szany's

disciplinary complaint was), but on February 12, 2018, Szany defaulted in that lawsuit but then obtained her own counsel and had the default vacated. She alleges that the City's refusal to hire a separate attorney for her was in retaliation for her filing the sexual harassment lawsuit at issue here and presumably is seeking to recover the costs of defending that lawsuit herself after she fired the attorney the City hired for her.

### Discussion

The operative complaint is Szany's sixth amended complaint, in which she asserts four live claims, two against each defendant. She has sued the City for two federal claims under Title VII: (1) for sexual harassment and a hostile work environment to occur; and (2) for retaliating against her for filing this lawsuit by providing her conflicted counsel in the state court traffic accident lawsuit. In addition, she has sued Garcia for battery and for false imprisonment in relation to the vest-holding and buttocks slapping incident. Each defendant has moved for summary judgment on the claims respectively asserted against them.

Before addressing the substance of this case—the summary judgment motions—there are a slew of other matters to be decided. The parties, as has they have frequently done throughout this litigation, have avalanched the court with motions, so those will be dealt with before getting to the meat of the matter.

### A.  The Preliminary Motions

Here are the pending motions to address:

- Plaintiff's motion to file excess pages in response to the defendants'

motions for summary judgment [DE 324]

- Plaintiff's motion to strike the declaration of Captain Jeff Long in support of Hammond's motion for summary judgment [DE 325]

- Plaintiff's seventh motion to amend her complaint [DE 326]

- Defendant Hammond's motion to strike the declaration of Denise Szany [DE 344]

- Plaintiff's motion for leave to file a statement of genuine issues in dispute [DE 348-350]

- Plaintiff's objection to Magistrate Judge Kolar's Order on maintaining certain documents under seal. [DE 364.]

All six are ripe for ruling and will be resolved prior to diving into the summary judgment motions.

### 1. Plaintiff's Motion for Leave to File an Oversized Brief

Szany's motion for leave to file a brief in excess of the page limit is first up. This motion was filed contemporaneously with Szany's response brief. Local Rule 7-1(e) governs the page limits of briefs in this District. It limits response briefs to 25 pages but Local Rule 7-1(e)(2) allows additional pages for "extraordinary and compelling reasons." N.D. Ind. L.R. 7-1(e)(2). The primary reason Szany offers for needing more than twice the page limit is that she is responding to two summary judgment motions, one from each defendant. [DE 324 at ¶ 3.] She says that if she had to file two briefs, they would be more than 60 pages in total (and both over the page limit), so her one behemoth of a brief is more efficient. I'm not sure I follow that argument, or her statement that if she responded to the briefs separately it would require me to draft two

-11-

separate opinions in the case. [*Id.*] While this case involves serious allegations and very important issues, from a legal and factual perspective, it is not a complex case in the least. What's more, Szany's response brief employs a variety of different font sizes and formats, numerous footnotes, and large blocks of single-spaced text—in addition to a 10-page declaration laced with argument—all of which makes it in substance even longer.

In any event, the brief is on file, the defendants have filed their replies, and I have read and considered all of it. I will exercise my discretion to grant Szany's motion for leave to file her 52-page response brief, despite her failure to show "extraordinary or compelling reasons."

### 2. Plaintiff's Motion to Amend and File a Seventh Amended Complaint

On the same day that she filed her opposition to summary judgment (which was nearly two months after defendants filed their motions), Szany sought leave to file a seventh amended complaint. [DE 326.] On the face of her motion, Szany seeks "leave to substitute Defendant Garcia for Defendant Hammond in Counts IV and V . . . [and] to add a Count V(A)" against Garcia which, in the alternative, alleges that he was acting outside the scope of his employment when he struck Szany. [*Id.* at 1.] According to Szany, allowing the amendment would not be prejudicial because Hammond has been a party to this lawsuit and aware of the underlying facts for years, even if they hadn't been sued for those claims. Thus, she says there would be no prejudice in making the City the defendant on those claims, even after both it and Garcia have moved for

summary judgment on the prior complaint. Szany's counsel, rather incredibly, further says that suing Garcia (in her third, fourth, fifth, and sixth amended complaints) was simply a mistake, and apparently asks that I view it as a slip of the pen or scrivener's error. [DE 326 at ¶ 3.] Szany's argument in that regard is unmoored from the facts and extensive history in this case.

As with many of the motions before me, this one must be understood in the context of the larger procedural history of this case. Szany first sued Garcia in her second amended complaint under a Section 1983 theory of liability for assault, battery, false imprisonment and sexual misconduct. [DE 34.] When the Court dismissed that claim, Szany petitioned the Court to allow her to amend her complaint "to add state counts of Battery, Assault and False Imprisonment against Jamie Garcia." [DE 48.] In that motion, she stated that she could bring those claims against Garcia in a separate state court action, but it would be more efficient to proceed in one federal lawsuit. [*Id.*] Leave was granted [DE 51] and she filed her third amended complaint. [DE 52.] She was granted leave to amend several more times thereafter, and in every version of the complaint she filed, she asserted state law claims for battery and false imprisonment against Garcia—but never against Hammond. Likewise, in each amended complaint, she asserted (and continues to assert) that Garcia was acting within the scope of his employment when he allegedly harassed and struck Szany.

In her fifth amended complaint, Szany alleged a retaliation claim premised on the fact that she was forced to share the same patrol car with Garcia. Not at the same

-13-

time mind you, but that they just happened to use the same patrol car on non-overlapping shifts. Szany alleged this was retaliatory because there was a ***possibility*** that she and Garcia may have some minimal contact during a handover, although that never occurred. That claim was distinct and separate from the retaliation claim that is at issue in this summary judgment opinion and which is discussed in detail below.

I granted Hammond's motion to dismiss the retaliation claim based on shared patrol cars on non-overlapping shifts. [DE 249.] I expressly granted Szany leave to file an amended complaint as to that claim to see if she could allege additional facts which may state a claim. [*Id.* at 7.] In my order allowing that limited amendment, I concluded the opinion with the statement that "[n]o additional leave to amend will be granted absent extraordinary circumstances and ample good cause." [DE 249 at 7.] I specifically admonished her counsel to "take this opportunity to make sure that previously dismissed claims are not [incorrectly] repeated in her complaint, that the complaint accurately states what iteration of the complaint it is, and that her paragraphs are properly numbered" because the complaint before me had been littered with typos and dismissed claims, making it difficult to understand in parts. [*Id.*] That resulted in the sixth amended complaint, which again, only sued Garcia for the state law claims. [DE 258.]

Hammond again moved to dismiss the retaliation claim relating to the "shared" patrol car. Hammond argued that it still did not allege sufficient facts to constitute a viable retaliation claim. [DE 268.] I agreed and Szany's claim was dismissed with

prejudice because it was clear that there would not be any set of facts which would state a claim. [DE 301.] I concluded that opinion by noting that I had allowed her the opportunity to replead her claim with reluctance, and that reluctance was well-founded because her amendment offered hardly anything new. [DE 301 at 7.] With discovery closed and a summary judgment briefing schedule set soon thereafter, it seemed the pleadings would finally be settled. Not so, and against that backdrop, Szany has now asked for leave to file a seventh amended complaint.

It is axiomatic that under the Federal Rules of Civil Procedure, leave to amend a complaint should be liberally granted. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). But the deadline to amend in this case was May 15, ***2018***, [DE 58], and thus Szany must demonstrate good cause to amend the scheduling order before she can further have leave to amend. Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). In her motion and brief, Szany doesn't attempt to meet this good cause standard. Furthermore, "leave to amend is 'inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)).

There are no recently discovered facts that Szany says she learned that require amendment. Instead, the basis for the motion is the fact that the Indiana Tort Claims Act generally prohibits a plaintiff from suing an individual defendant in tort for actions which were done in the scope of the individual defendant's government employment. I.C. § 34-13-3-5(b); *Bushong v. Williamson*, 790 N.E.2d 467, 472-73 (Ind. 2003) (affirming grant of summary judgment in favor of gym teacher who allegedly battered a student during gym class). This is defendant Garcia's primary argument on summary judgment. Thus, it seems the only thing Szany has learned is that there is a fatal flaw in the legal theory of her case.

That is not enough reason to justify an amendment. *See Oruta v. Cent. Plaza Home*, 472 F. Supp. 2d 951, 959 (N.D. Ill. 2006) ("[N]ormally a plaintiff may not amend his complaint in response to a motion for summary judgment.") (citing *Griffin v. Potter,* 356 F.3d 824, 830 (7th Cir. 2004)); *Stokes v. Beth*, No. 07-C-0496, 2009 WL 2984670, at *1 (E.D. Wis. Sept. 17, 2009) ("Plaintiff did not file the motion until after the close of discovery and after defendant's motion for summary judgment. The only purpose of plaintiff's motion appears to be to avoid summary judgment[.]") (denying leave to amend and granting summary judgment). That's especially true when the proposed amendment comes years after the deadline to amend, long after discovery closed, and repeated failures to cure deficiencies in the numerous previous complaints. *See Feldman*, 196 F.3d at 793. "Regardless, ignorance is hardly a valid reason for missing the deadline by so many months; the failure to anticipate an obvious and legally well-grounded defense

-16-

does not excuse the delay." *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011).

Nor do the cases relied on by Szany help her. The Seventh Circuit's decision in *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) involved a multitude of different corporate entities run out of the same office and a plaintiff who mistakenly mistook "Elan, Inc." and "Elan Corp." Nothing of the sort happened here. Instead, Szany proceeded against Garcia under a legal theory that seemed to have no viability under Indiana law. Szany's remaining cases are Indiana state law cases, which have little to no bearing on application of the Federal Rules of Civil Procedure and appear cited merely to explain how wrong Szany's counsel previously understood Indiana law on government employees and tort liability.

In sum, Szany's motion for leave to file a seventh amended complaint is not well taken. It came nearly two years after the deadline to amend, as well as after the close of discovery and filing of summary judgment; makes no effort to meet Rule 16's good cause standard for amending the scheduling order; is not based on newly discovered facts; displays a lack of diligence on Szany's part; and would require substantial re-briefing of summary judgment, a process which will take up months of time in what is already a more than three year old case. It seems apparent this was no scrivener's error and instead merely an attempt to change the legal theory of the case at the last minute. The motion for leave to amend will be denied.

### 3.  The Two Motions to Strike Declarations

Szany has moved to strike the affidavit of Captain Jeff Long. [DE 325.] The City

included Captain Long's affidavit as evidence in support of its motion for summary judgment, but Szany says it violates the "sham affidavit" doctrine by which parties are not allowed to create triable issues of material fact by submitting a declaration or affidavit in support of summary judgment which contradicts prior deposition testimony. [DE 335.] Likewise, Hammond has moved to strike Szany's declaration (and an additional exhibit, discussed below), submitted in connection with her opposition to summary judgment. The basis for doing so isn't because it is a sham affidavit, but instead because it is unsigned, not made under penalty of perjury, and is otherwise inadmissible evidence. [*See* DE 344.]

I'll start with Szany's motion to strike Captain Long's affidavit. It's a basic principle that "a subsequent affidavit may not be used to contradict the witness's deposition" in order to create an issue of material fact and avoid summary judgment. *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). So, the question boils down to whether Captain Long's declaration contradicts his deposition testimony, or is it more akin to a clarification that remains consistent with his deposition testimony? *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) ("[A] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.") (citation omitted). The affidavit statement in question is paragraph 5, which reads:

> I also gave an order to my lieutenants, Lt. Tichy and Lt. Berdine,
> who oversaw Cpl. Szany and Cpl. Garcia respectively, that Cpl.
> Garcia was to have no contact with Cpl. Szany. Pursuant to my
> order, Lt. Berdine ordered Cpl. Garcia to have no contact with Cpl.
> Szany.

[DE 309-5, Aff. of J. Long ¶ 5.] Szany says that the existence of such an order directly

contradicts the following exchange from Captain Long's deposition, which took place in

November 2018, approximately two years after the incident between Szany and Garcia:

> Q.: Have you taken any steps to protect [Szany] from Corporal
> Garcia as of recent?
> A: I gave him five days off and she's on a different shift. There's no
> other steps I feel like I can take.

[DE 313-2, J. Long Dep. Tr. 90:10-15.] Szany likewise points to Captain Long's

deposition answer in which he said "Do I believe that—do we believe she's in danger?

No, we don't believe that. If you're me and the assistant chief, we do not fear for her

safety." [*Id.* at p. 86:4-7.]

Hammond responds that the deposition question only asked about "recent"

steps, *i.e.* recent as of November 2018 when Captain Long was deposed, but that

paragraph five of Captain Long's affidavit is discussing actions near the time of the

incident between Szany and Garcia, *i.e.*, October 2016. It further points out that Szany's

counsel did not "close out" Captain Long at his deposition by asking him to list all

actions taken in response to the incident. Lastly, it says the answer about Szany's safety

from the deposition is clearly stated in the present tense and thus has nothing to do

with what Captain Long may have done two years prior. Thus, there would be no

contradiction. I agree.

"An affidavit that is an amplification rather than contradiction of prior testimony is not within the 'sham' exclusionary rule." *Canen v. Chapman*, 2016 WL 695970, at *2 (N.D. Ind. Feb. 22, 2016). It seems obvious that is the case here. In his deposition, Captain Long did not say that he never issued a no contact order, which would be a contradiction with what is stated in his affidavit. Nor did he purport to detail out every step he took since the alleged incident—at least in the deposition testimony submitted by the parties. Without some clear contradiction, there is no basis to strike Captain Long's affidavit. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996) (noting that affidavits should be struck as shams with "great caution"). Consequently, Szany's Motion to Strike will be denied.

This brings me to the City's motion to strike. [DE 344.] At issue is a 10-page single spaced declaration submitted by Szany in opposition to summary judgment. The declaration is a peculiar document. It quotes extensively from Szany's own deposition testimony, testimony that is then fully repeated in the briefing as well and finally is attached as an exhibit. [*See generally* DE 319-2, Ex. 1 Decl. of D. Szany.] At times, it quotes that testimony after statements from defendants' motions for summary judgment, presumably to rebut those statements. [*Id.* at p. 8-10.] In this way, it reads much more like a legal brief than a factual declaration. It also includes Szany's opinions concerning what is or isn't sexual assault under Indiana law [*id.* at ¶ 8], and a link to a USA Today article about a TV reporter in Georgia who was slapped on the buttocks by

a man who was then subsequently charged with sexual battery. [*Id.* at p.2, n.2.] She also states her conclusions that Garcia received extra overtime hours and was not actually "off-duty" during at least part of the period in which he was allegedly serving a five-day suspension. She states her analysis and her conclusion (*i.e.*, opinions) as to what was or wasn't or should have been in Garcia's payroll file. [*Id.* at ¶¶ 23-35.] It further includes allegations that Garcia behaved inappropriately with other women who are not only not Szany, but not even on the police force, and who it doesn't appear Szany has any personal connection to. She says that she has "personal knowledge that Garcia was never given sexual harassment training by the Hammond PD" but does not offer any basis for what the personal knowledge is beyond the tautological statement that she has such personal knowledge. [*See id.* at ¶ 55.] Furthermore, there are statements concerning female anatomy, dispersions against defense lawyers, and statements concerning what she says were societal norms in "the 1990s" compared to 2020. The declaration then concludes with "Pursuant to 28 USC 1746, I affirm under penalty of law that the foregoing is true and accurate based on my reasonable belief, interpretations, observations, and experiences. s/Denise Szany 2-8-2020." [*Id.* at p. 10.]

Hammond's first argument in support of striking Szany's declaration homes in on that last part of the declaration, the affirmation. It says that the affirmation on its face violates 28 U.S.C. § 1746 which requires that any such declaration, if it is unsworn, include "in substantially the following form": "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)". 28 U.S.C. § 1746. In support of this argument, the City points to how Szany's affirmation doesn't track the language and to cases where courts have struck similarly worded declarations.

"The Seventh Circuit teaches that a court is not to be 'unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of [declaration] execution ... are satisfied,' ... but compliance with 28 U.S.C. § 1746 is mandatory and fundamental, not a 'non-substantive' requirement." *Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 842 (N.D. Ill. 2010), *aff'd sub nom. Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011) (citation omitted); *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990) ("[T]he 'affidavit,' which did not subject Hanan to the penalties for perjury, was not within the range of evidence that the district court could consider."). These cases (and common sense) bring one to the conclusion that the specific "under penalty of perjury" and broader "under penalty of law" are not synonyms or substantially the same. The statutory language must be followed or else an unsworn declaration may not be considered as evidence on summary judgement. *See Trapaga v. Cent. States Joint Bd. Local 10*, No. 05 C 5742, 2007 WL 1017855, at *3 (N.D. Ill. Mar. 30, 2007) (analyzing statutory language of § 1746 and striking affidavits despite "Plaintiffs' counsel['s] … self-proclaimed attempt to improve upon the statutory language of § 1746").

Szany's response to this argument is curious. Instead of seeking leave to refile the affidavit in its proper form, which I would have readily granted, she doubles down.

-22-

Her counsel points to other cases, before other judges (some in other districts) where he has filed documents "with electronic signatures for years." [DE 351 at ¶ 1.] He says this is "the norm in federal courts." [*Id.*] But again, he cites no precedent, statute or rule which supports his position. What I think he is referencing are electronic signatures of *lawyers* on court filings, not factual exhibits signed by a witness or party. *See* L.R. 5-1. But that just makes this equitable estoppel-type argument even further far afield. At bottom, he does nothing to challenge the clear mandate of Section 1746 or the Seventh Circuit case law which makes clear that unsworn declarations may only be considered if they are explicitly made under penalty of perjury that they are true and correct.

As I said, if the only problem with Szany's declaration were its inadequate affirmation, I would likely try to rectify the situation by ordering Szany to submit a properly sworn declaration pursuant to Rule 56(e)(4), which allows courts to issue appropriate orders to ensure facts are adequately supported or disputed. Fed. R. Civ. P. 56(e)(4). But, in any event, there are other substantive issues with the declaration which render it inadmissible and improper for me to consider on summary judgment.

Federal Rule of Civil Procedure 56 states that "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As summarized above, Szany's declaration is replete with speculation, opinion, and legal conclusions—none of which is evidence that is admissible at summary judgment. Other supposed facts are simply

not relevant to the claims before me. For example, Szany's opinions as to what is or isn't

criminal conduct does not become fact because she has personal knowledge of criminal

laws as a police officer, as Szany states. [*See* DE 351 at ¶ 5.] That which isn't irrelevant or

inadmissible on its face, namely the quoted portions of Szany's deposition testimony,

are cited in the legal briefing or attached as exhibits. Thus, I will consider some of the

evidence contained within the declaration. In other words, her deposition testimony in

which she recounts her version of the factual events that form the basis of this lawsuit is

admissible, but Szany's opinions, speculation, and legal conclusions are not. The City's

motion to strike the declaration of Denise Szany will be granted.

Hammond has also moved to strike Exhibit 31 attached to Szany's opposition

brief. It says the exhibit is unauthenticated hearsay. Exhibit 31 purports to be a portion

of transcript of a May 31, 2019 "Facebook Live" event in connection with WJOB, a

news/talk radio station based in Hammond, in which the Mayor of Hammond, Thomas

McDermott, Jr., was a guest and spoke with callers. [DE 319-2 at Ex. 31, Transcript of T.

McDermott Interview.] In the transcript, Mayor McDermott comments on this case,

discusses the then-recent dismissal of Garcia from the Hammond police, and other

aspects of the case. [*Id.*] What this exhibit is not, is a deposition transcript or other form

of testimony—although as a statement by the Mayor of Hammond, it's hard to see how

it would be considered hearsay as opposed to an opposing party's statement. *See* Fed. R.

Evid. 802(d)(2).

Szany defends the transcript as evidence by directing me to Federal Rule of

Evidence 902 and 903. Rule 902 deals with self-authenticating evidence, while Rule 903 concerns whether a subscribing witness's signature is necessary to authenticate evidence. Frankly, Szany's exclusive reliance on these two Rules of Evidence is puzzling. Just because evidence is authenticated does not mean it is admissible. *See, e.g.*, *In re Barber*, 236 B.R. 655, 662 (Bankr. N.D. Ind. 1998) ("[A]lthough this document is self-authenticating, it must nevertheless satisfy the other pertinent Rules of Evidence as to its admissibility."). At most, this would seem to apply to a "*Faragher-Ellerth* defense" by the City that it took reasonable steps to prevent and correct sexual harassment and that Szany failed to comply with its policies. But as the City notes throughout its briefing, it has not asserted such an affirmative defense in this case. Thus, there is little basis which I can see for why this evidence would be relevant, a prerequisite of admissibility, and Szany does not offer any in her briefing.

What's more, even if Rule 902 somehow was applicable and determinative, Szany has not included an authenticating certification from the custodian of the purported record as required by the rule. *See* Fed. R. Evid. 902(11). Instead she offers a statement by a court reporter who transcribed the audio file into a transcript. But that's not sufficient or what the rule requires. In any event, the statements contained in Exhibit 31 will not be considered because they have no bearing on the material facts of the case. Nor has the document been properly authenticated. The City's Motion to Strike Exhibit 31 will be granted.

### 4. Plaintiff's Motion for Leave to file her Statements of Genuine Disputes of Material Facts

Now it's on to Szany's motion for leave to file her Statement of Genuine Disputes of Material Facts. She is seeking leaving because she failed to include one her original opposition to the defendants' motions for summary judgment. The Local Rules of the Northern District of Indiana require any party opposing summary judgment to include, either in their response brief or as a separate appendix, a Statement of Genuine Disputes of Material Facts, which responds to the required Statement of Undisputed Facts that movants must include with their motions. N.D. Ind. L.R. 56-1.

Again, the procedural history of this case must be discussed to add some context to my ruling. I previously admonished the parties about "flout[ing] the local rules." [DE 284.] In a prior order I explained:

> [A]ny further conduct which even appears to run afoul of Federal Rule of Civil Procedure 1, the Indiana Rules of Professional Responsibility, or the Northern District of Indiana Local Rules, will not be taken lightly and will be dealt with accordingly. Counsel should consider themselves directed and admonished on these points and any further impropriety will be handled with appropriate sanctions, up to and including dismissal or striking of pleadings. ... Enough of that is enough.

*Id.* Unfortunately, that warning, whether by design, negligence or otherwise, went unheeded. Plaintiff's counsel has continued to violate the Local Rules of the Northern District of Indiana, improperly filing their most recent Motion to Seal [DE 322-23], and worse, failing to follow the requirements of L.R. 56 regarding summary judgment.

-26-

After the defendants noted in their reply brief that Szany failed to include the "Statement of Genuine Disputes" required by Local Rule 56-1(b)(2), Szany filed a motion for leave to file such a statement. [DE 348.] In that filing, Szany's attorney acknowledged that he is "accustomed" to creating similar statements of disputed fact in the Northern District of Illinois (presumably where he primarily practices law). [*Id.* at ¶ 6.] But he simply failed to do so here, without any real explanation other than stating that in his brief under the header of "Argument" he "initially had the label Facts in Dispute." [*Id.* at ¶ 5.] I'm not sure what that means, but no Statement of Genuine Disputes was included in either the brief or as an appendix, as required by Local Rule 56-1(b)(2). That much is clear.

The Seventh Circuit has held that I would be "well within" my discretion to strictly enforce this Local Rule against Szany and deem all of the defendants' evidence-based factual statements as admitted for purposes of summary judgment. *Wilson v. Kautex, Inc.* 371 Fed. App'x 663, 664 (7th Cir. 2010); *Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). *See also Thompson v. Einstien Noah Rest. Grp. Inc.*, No. 117CV02569JRSDML, 2019 WL 266671, at *3 (S.D. Ind. Jan. 18, 2019) (enforcing analogous Local Rule of the Southern District of Indiana and deeming material facts of the moving party as admitted for summary judgment purposes).

Given plaintiff's counsel's previous and multiple failures to follow the Local Rules, including my explicit warning in a court order that doing so was not optional,

there is sufficient cause to strictly enforce the Local Rules against Szany and her

counsel. But instead, I will strike a middle ground. I will deny Szany leave to file the

two separate statements and they will not be considered for purposes of summary

judgment. However, to the extent that Szany's summary judgment opposition brief [DE

312] identifies material facts and controverts them with admissible evidence, I will

consider them. But to the extent there are material facts contained within the

defendants' statements which are not controverted and are supported by evidence, I

will deem them to be uncontroverted.

5.  **Plaintiff's Objection to the Magistrate Judge Opinion on Maintaining Certain Information and Documents Under Seal**

The final ancillary matter to address is Szany's Objections to the Opinion and

Order of Magistrate Judge Kolar relating to various motions to seal materials submitted

by Szany in connection with summary judgment. [DE 364[2].] In that decision, Magistrate

Judge Kolar ordered that portions of Szany's summary judgment brief be redacted and

that certain exhibits remain sealed. Specifically, Magistrate Judge Kolar ordered that

certain four specific documents (found at DE 358-2, 358-3, 358-4, and 358-5) remain

sealed, and that certain other documents, including Szany's brief, be redacted. [DE 363

at 11.] All of these materials concern the allegations against Garcia made by his ex-wife

and the two women who participated in a ride along with him.

---

[2]  Magistrate Judge Kolar's decision further addressed a motion for clarification [DE 337] but Szany does not appear to offer any specific objection to the decision as it relates to that motion. So, I do not address it here either.

First, I must lay out the appropriate standard of review at play. In her objection, Szany cites to Federal Rule of Civil Procedure 72(b)(2) multiple times as the standard of review. [DE 364, at ¶¶ 1, 3.] But that is the incorrect standard, as motions to seal are nondispositive matters covered instead by Federal Rule of Civil Procedure 72(a). *See Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) ("Non-dispositive matters include evidentiary rulings, pretrial discovery matters, and the imposition of sanctions for discovery abuses[.]") (citations omitted); 28 U.S.C. § 636(b)(1)(A) (listing categories of motions which may not be referred to a magistrate judge for disposition but which instead may only be referred for a report and recommendation).

This distinction matters because the standard for resolving objections under Rule 72(a) is not the same as under Rule 72(b). Pursuant to Rule 72(b)(3), "the district court must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3) (emphasis added). On the other hand, under Rule 72(a) "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 426 (N.D. Ill. 2012) ("Rule 72, which was designed to implement § 636, introduced the terminology 'dispositive' and 'not dispositive' to differentiate those pretrial motions that a magistrate judge can decide by an order having independent effect, subject to reconsideration by the district court on a showing that the order is clearly erroneous or contrary to law, from those that only allow for a recommended disposition through a

-29-

report and recommendation having no independent effect, with review being *de novo*.")
(citations omitted). Thus, my review under Rule 72(a) is lighter than under Rule 72(b)
and I will only set aside Magistrate Judge Kolar's order if it is clearly erroneous or
contrary to law. As discussed below, it is neither of those things and Szany's objections
will be overruled.

      Szany says that Magistrate Judge Kolar's order "offends the 7th Circuit's position
on the sealing of documents" and that it broadly "deprive[s] the public of its 'right to
know.'" [DE 364 at ¶¶ 4-6.] Slightly more specifically, she cites to *GEA Group AG v. Flex-
N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014) in which the court stated that "[s]ecrecy in
judicial proceedings is disfavored, as it makes it difficult for the public (including the
bar) to understand why a case was brought (and fought) and what exactly was at stake
in it and was the outcome proper." But beyond these broad positions and quotes, Szany
offers nothing specific as to why Magistrate Judge Kolar's decision was clearly
erroneous or contrary to law.

      A review of Magistrate Judge Kolar's order makes clear that his ruling has a
sound basis in the law on issues of relevance, confidentiality, and the public's right of
access to judicial proceedings. The materials in question are not on their face relevant to
the issues in the lawsuit (concerning Garcia's conduct towards Szany and/or other
police officers), nor have they been relied upon in any judicial opinion or proceeding in
the case. Of course, Szany submitted the materials in connection with her summary
judgment briefing, but there was no opinion which was yet affected by or influenced by

them. As such, Magistrate Judge Kolar ruled that with no indication that these materials were relevant (beyond Szany's say-so), any presumption in favor of their public disclosure wasn't triggered unless the purportedly confidential materials otherwise "affect the disposition of federal litigation." *GEA Grp.*, 740 F.3d at 419-420. As discussed below, my decision on summary judgment doesn't change matters.

On the other hand, in support of keeping these materials sealed, Garcia cited the protective order in this case which keeps documents disclosed in discovery confidential if their public disclosure would result in undue annoyance, embarrassment, or oppression. [*See* DE 281 at 5-6.] This argument went unaddressed by Szany in her briefing before Magistrate Judge Kolar and she does not confront it in her objections to me. [DE 363 at 8]; *see also* Fed. R. Civ. P. 26(c)(1). And it is evident from a review of these materials that they contain extremely troubling allegations against Garcia involving non-parties to this case. But most importantly, as discussed below, my summary judgment opinion does not change the calculus on the motions to seal because I find the documents and evidence at issue to be immaterial for purposes of summary judgment. They thus have no impact on the disposition of this case and there is no overriding public interest in favor of their disclosure, especially when balanced against their likelihood to cause undue annoyance, embarrassment and oppression. *See GEA Grp.*, 740 F.3d at 419-420. Szany offers nothing to upset Magistrate Judge Kolar's finding on this point and I see no other clear basis by which to overrule his well-reasoned decision. Accordingly, her objection will be overruled.

-31-

**B.   Hammond's Motions for Summary Judgment**

With the exhausting work of the preliminary matters out of the way, it's finally

on to the substance of the case: the two motions for summary judgment filed by the

defendants. I'll begin with Hammond's motion.

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and [the moving party is] entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issues of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding whether that is

the case, I must draw all reasonable inferences in favor of the nonmoving party.

*Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001). That means that if the

defendants meet their initial burden, it then falls to Szany to muster sufficient evidence

that contradicts the defendants' so as to create a question which can only be resolved by

a jury. *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("To survive a

motion for summary judgment, she must present the court with evidence that, if

believed by a trier of fact, would establish each of the elements of her claim.").

A genuine issue of material fact is not demonstrated by the mere existence of

"some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a

genuine issue of material fact only exists if "a fair-minded jury could return a verdict

for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

Furthermore, drawing reasonable inferences in favor of the non-moving party does not mean I must indulge and accept every version of the facts espoused by them. Arguments must be made on evidence, not mere innuendo. As the Seventh Circuit says, "it is the put up or shut up moment in a lawsuit" to see if viable claims exist. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation omitted).

Szany's complaint states two claims against the City, one for sexual harassment and a hostile work environment pursuant to 42 § U.S.C. 2000e-2, and retaliation pursuant to 42 U.S.C. § 2000e-3(a). I'll take them up in turn.

### 1. The Sexual Harassment Claim Against Hammond

The sexual harassment claim relates principally to the incident where Garcia slapped Szany on the buttocks inside the police station in October 2016. "A sexual harassment claim under Title VII requires [Szany] show: (1) her work environment was objectively and subjectively offensive, (2) the harassment she complained of was based on her gender, (3) the conduct was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) there is a basis for employer liability." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018).

While the City raises multiple arguments and says that the undisputed facts show that Szany's claim fails to satisfy several elements, I will focus most of my attention on the third element which focuses on the "severe or pervasive" nature of the conduct. In the City's view, the incident, even if it occurred exactly as Szany tells it, is not enough to make out a sexual harassment and hostile work environment claim

-33-

against it. The crux of the City's argument comes down to this statement from its brief:

"The incident in the briefing room with Cpl. Garcia around 11:00 p.m. on October 19,

2016 is the one and only time during her 10 years with the department that Cpl. Szany

experienced an episode of inappropriate conduct that she perceived to be of a sexual

nature." [DE 309 at 3.] That is, although Garcia's actions are indefensible, this was an

isolated incident between two coworkers and thus the City cannot be liable for it,

regardless of any culpability or liability that Garcia may have.

The first issue is whether the encounter between Garcia and Szany was "severe"

as that term has been interpreted by the caselaw. "[I]solated incidents (unless extremely

serious) do not constitute a hostile work environment." *Faragher v. City of Boca Raton*,

524 U.S. 775, 788 (1998). "Although one might think that any nonconsensual sexual

touching could give rise to a claim", there is no such a categorical approach and instead

courts must assess the totality and particularities of each case. *Everson v. City of Madison*,

672 F. Supp.2d 881, 884 (W.D. Wis. 2009). That said, the Seventh Circuit has held in

multiple instances that otherwise isolated incidents of unwanted touching, including of

the buttocks, without more, will not constitute severe sexual harassment. *Perez v.*

*Norwegian-Am. Hosp., Inc.*, 93 F. App'x 910, 914 (7th Cir. 2004) (disagreeing with district

court's suggestion that a slap on the buttocks is comparable to athletes encouraging one

another or that it was inherently non-sexual but nonetheless finding it failed to

constitute severe harassment "because it was not objectively abusive"); *Hilt–Dyson v.*

*City of Chicago,* 282 F.3d 456, 463–64 (7th Cir. 2002) (two instances of back rubbing not

-34-

sufficiently severe); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998)

(holding that "four isolated incidents in which a co-worker briefly touched her arm,

fingers, or buttocks" not sufficiently severe or pervasive to survive summary

judgment); *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 706–08 (7th Cir. 1995)

(holding that physical contact of supervisor rubbing his foot against a plaintiff's leg and

grabbing her buttocks a single time insufficient to survive summary judgment); *Saxton*

*v. AT &T*, 10 F.3d 526, 528 (7th Cir. 1993) (running hand along plaintiff's upper thigh

and kissing her not sufficiently severe).

Courts throughout the country continue to insist on a level of severity beyond

the evidence offered by Szany here and grant summary judgment when a plaintiff fails

to produce more. *E.g.*, *Clayton v. City of Atl. City*, 538 F. App'x 124, 129 (3d Cir. 2013)

(affirming summary judgment in favor of city where one police officer grabbed

another's "buttocks in public and commented that it was 'the only thing she has going

for her'" as insufficiently severe); *Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825,

826 (5th Cir. 2009) (affirming summary judgment in favor of employer where single

incident involved one employee touching his chest to female coworkers and following

her when she tried to walk away and "in doing so, placed his hand on her stomach and

ran his arm around her waist … rubb[ing] his pelvic region across [her] hips and

buttocks"); *Marquardt v. Ocean Reef Cmty. Ass'n*, No. 19-10110-CIV, 2020 WL 1812303, at

*9 (S.D. Fla. Apr. 9, 2020) (inappropriate comments regarding anal sex and "hot single

women", multiple instances of unwanted hugging, and hitting on the buttocks with a

folder found to be neither severe nor pervasive); *Barber v. Drury Dev. Corp*, No. 4:14CV319 TIA, 2015 WL 1005513, at *8 (E.D. Mo. Mar. 5, 2015) (granting summary judgment for employer where harassment at issue was "one single incident" of buttocks slapping and there was "no evidence that I unreasonable interfered with Plaintiff's work"). *See also Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) ("This singular incident, while most unfortunate, does not meet the [severity] standard required.").

By contrast, in cases in which the touching was more invasive, explicitly sexual in nature, and coupled with verbal sexual harassment, courts have found the actions sufficiently severe or pervasive. *E.g.*, *EEOC v. Mgmt. Hospitality of Racine, Inc.* 666 F.3d 422, 432 (7th Cir. 2012) (conduct found severe when manager "engaged in sexually harassing conduct during every shift" including "slap groping" of plaintiff's buttocks and making sexually explicit propositions); *Patton v. Keystone RV Co.*, 455 F.3d 812, 816–17 (7th Cir. 2006) (allegation that harasser's "hand was under [plaintiff's] shorts, on her inner thigh, and touching her underwear" was severe); *Worth v. Tyer,* 276 F.3d 249, 268 (7th Cir. 2001) (touching of plaintiff's "breast near the nipple for several seconds is severe enough"); *Hostetler v. Quality Dining, Inc.,* 218 F.3d 798, 807–09 (7th Cir. 2000) (nonconsensual kissing and attempts to remove bra sufficiently severe to survive summary judgment; *Doe v. City of Belleville,* 119 F.3d 563, 582 (7th Cir. 1997) (finding repeated comments and threats concerning forcible anal sex, being called "queer" and "fag," and the nonconsensual grabbing of a teenager's testicles to be severe and

-36-

pervasive) (vacated on other grounds by *City of Belleville v. Doe*, 523 U.S. 1001 (1998)).

Szany dismisses much of this caselaw as outdated and from "the 1990's" and therefore no longer "precedent." [DE 312 at 47.] While she and her attorney may hold that attitude, I do not. Courts throughout the country continue to similarly apply these standards. In a hierarchical system of courts, binding precedent is just that, district court judges are not free to disregard the law as clearly espoused by the Seventh Circuit, until it is either overruled by that court or the Supreme Court. That has not happened and so those cases control the outcome.

In sum, I don't think the incident between Garcia and Szany on October 19, 2016, can be fairly characterized as severe. I don't lightly arrive at that conclusion but am led to it by the Seventh Circuit decisions I have cited above. The encounter between the two began when Garcia grabbed Szany's vest and they tussled back and forth. Szany admits there wasn't anything sexual or sex-based about Garcia grabbing her vest, and admits she pushed him as well during the altercation. There is no allegation or suggestion that Garcia made any sexually suggestive statements towards Garcia, prior to the altercation, during it, or thereafter. A minute or so later, the encounter continued with Garcia slapping Szany on the buttocks. Garcia did not squeeze Szany's buttocks or allow his hand to linger on her. And while Szany reiterates throughout her briefing that her buttocks is near or adjacent to her genitals, that anatomical reality does not alter the calculus here, as Garcia did not, for example, move his hand towards Szany's genitals after striking her buttocks.

-37-

Before moving forward, let's be clear about something: *none* of this is meant to diminish any humiliation or the invasion of privacy and bodily autonomy that Szany likely felt as a result of Garcia's actions. Nor does it any way excuse Garcia's actions. It just means that under controlling law, it is not sufficiently severe to make a claim by which an employer can be held liable.

That said, liability can also lay where the harassment is pervasive. Recall that the standard is whether the harassment is severe *or* pervasive—it's a disjunctive test. The evidence is even weaker under this theory. Other than the incident on October 19, 2016, Szany recounts two other encounters with Garcia that she argues shows Garcia's conduct was pervasive. She references the prior incident in which she and Garcia touched one another (he grabbed her knee or legs and she punched him in the arm accordingly) after which she informed a supervisor that Garcia was "annoying." [DE 309-1, Szany Dep. Tr. 55-56, 58-60, 73, 82.] She also points me to the time Garcia asked her if she was "too good for him" and walked shoulder to shoulder next to her waiting for an answer. But she testified she did not perceive the interaction to be sexual, or even harassment, and that she did not report it. [DE 307-1, Szany Dep. Tr. 58-60.] Thus, it is difficult to say they were even subjectively offense to Szany—another required element. These three incidents, which took place months, if not years apart, do not establish pervasive sexual harassment in the workplace.

In addition to the three incidents that actually involved Szany, she further directs me to Garcia's actions and behavior towards (1) his ex-wife, which occurred outside the

-38-

workplace and several years before the October 2016 incident between Garcia and Szany; and (2) the two young women who participated in a police ride along with Garcia, which occurred several years after the October 2016 incident involving Szany and Garcia. Whatever relevance these other incidents may have to show that Garcia is anything but an upstanding member of the community, the fact remains they have no material relevance to Szany's claims in this case. Neither of those incidents involved Szany, nor were they harassment targeted at other employees of the City. And Szany offers no legal support for the notion that Garcia's alleged actions against his ex-wife, which did not occur in the workplace, or his actions towards the women in the police ride along, which post-date the lawsuit, may be used by Szany to make her hostile work environment claim succeed.

Furthermore, even if the severe or pervasive nature of the harassment were a closer call, an employer "will not be liable for the hostile environment absent proof that it failed to take appropriate remedial measures once apprised of the harassment." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004). In a similar vein, "[a]n employer can generally avoid liability for a hostile work environment if it promptly investigated complaints made by the plaintiff and acted to stop the harassing behavior." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010). The only incident that Hammond had notice of was the slapping incident so that is where I will focus my attention. When Szany brought that incident to the attention of her supervisors, they promptly investigated the incident, determined that Garcia violated

-39-

rules and regulations and disciplined him. Hammond says these measures were sufficiently reasonable as a matter of law. I agree, and this provides another basis to grant summary judgment in its favor.

Szany has tried to create an issue of fact regarding the investigation by claiming that Hammond's response was insufficient, but I don't think the material facts, even taken in a light most favorable to Szany create such an issue. Here the undisputed facts show that within days of the incident, senior members of the Hammond PD issued a no contact order between Szany and Garcia, ensured they would not work overlapping shifts, and appointed an officer to investigate the incident. That officer conducted interviews of Garcia and Szany, as well as the other officers who were present for the incident. Summaries of those interviews were then turned into a written report which concluded Garcia violated two of the Hammond PD's rules and regulations relating to officer conduct. That report was signed and dated on November 29, 2016, a little more than a month after the incident.

From there, the parties diverge on what they say are the material facts, with Szany focusing on how Hammond disciplined (or failed to discipline) Garcia for his conduct. Hammond responds that even if everything Szany says is true, it does not change the fact its response was reasonable under the circumstances and that Szany's focus on when Garcia served his suspension, how he served it, and whether it was a "valid suspension" are red herrings. I tend to agree. The relevant point here, which remains undisputed, is that Hammond investigated the incident, found Garcia violated

-40-

the rules, and disciplined him. Most importantly, Hammond ensured that Garcia and Szany were kept away from one another on the force, and there was no harassment thereafter. That meets the legal requirements of a reasonable response. *Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 995 (7th Cir. 2011) (employer's response to harassment claims of reprimanding alleged harasser and then limiting overlap in employee schedules was "reasonably likely to end" the harassment and thus entitled employer to summary judgment).

It seems that in Szany's view, anything less than Garcia's immediate dismissal after the incident makes Hammond liable, but that is not the law. Nor does it matter whether Hammond followed every internal policy or rule in regard to how it disciplined Garcia, so long as the response was otherwise reasonable. *Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 387 (7th Cir. 2012) ("Our focus is on whether the defendant responded promptly and effectively to the incident not on whether it complied with its own internal policy. The failure to follow internal policy does not matter so long as the employer's response is otherwise reasonable under Title VII, which it was here.") (cleaned up).

The investigation here is a far cry from *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981 (8th Cir. 2016), a case relied on by Szany, in which the Eight Circuit reversed a grant of summary judgment in favor of an employer and questioned the reasonableness of the employer's actions. In that case, the plaintiff, a truck driver, reported that her co-driver asked if she wanted a romantic relationship. When she declined, he began harassing

her. He purposefully exposed his genitals to her while she was driving, "often [stood] in the back of the cab while she was in the driver seat, [and] lean[ed] over in his underwear with his hands on the overhead compartment", and then a few days later offered to "forgive an eight hundred dollar debt" if she would have sex with him. 809 F.3d at 984-85. When she reported these incidents to her employer over the course of several days, she was repeatedly told to try and endure it and to finish the trip before the company would remove her from the situation and pair her with a different driver. *Id.* That's much more extreme than the situation here wherein there was a single incident, no propositioning, and a (successful) no contact order and investigation were undertaken immediately after Szany reported the incident.

Szany's other arguments focus heavily on irrelevant facts. For example, Szany points to an incident from October 2015 in which another female officer complained about inappropriate touching by another male officer. She also points to an October 2018 complaint in which officers were using Hammond PD equipment to text one another lewd statements and "jokes." From these facts, Szany asks that I extrapolate that Hammond consistently allowed a hostile work environment to fester. But none of the allegations or alleged prior incidents relied upon by Szany involved Garcia. And that makes it very distinguishable from the situation in *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154 (9th Cir. 2017), wherein the employee who raped the plaintiff had a "history of this kind of behavior" that was known to the employer.

Szany also refers to other prior incidents with Garcia to establish that Garcia had

a pattern of harassment that Hammond was on notice of. As noted above, Szany testified to a pre-October 2016 incident where Garcia asked her if she was "too good for him" and he walked shoulder to shoulder next to her. But, again, she did not subjectively perceive that to be sexual harassment at the time. [DE 307-1, Szany Dep. Tr. 56-60, 73.] On another prior occasion, she reported to Lt. Tichy that Garcia's behavior towards her was "annoying" after Garcia grabbed her knee and she lightly punched him in the shoulder. But she did not file a formal complaint or follow-up after that incident. [*Id.* at 73, 82.] Again, she testified she did not find them sexual in nature or subjectively offensive beyond annoyance. [*Id.*] Szany asks that I interpret these events as systematic harassment and assault by Garcia that Hammond was on notice of, but that stretches the reality of what she testified to well-beyond making inferences in her favor.

Other arguments entirely miss the legal mark, such as those premised on the *Faragher-Ellerth* defense, which is an affirmative defense in sexual harassment cases derived from the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). First, it would be inapplicable in this case, because Garcia was not Szany's supervisor or superior at work and instead held the same Corporal rank as she did. The Supreme Court has explained the different standards and bases for employer liability in these two distinct contexts:

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's

> harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Second, as discussed in *Vance*, it is an affirmative defense, and the City of Hammond has not sought to invoke it, so Szany's insistence that the City must satisfy its elements to prevail at summary judgment is legally misplaced. Instead, I look to whether Hammond was "negligent either in discovering or remedying the harassment" and here, as discussed above, the material facts all show it was not.

Finally, some of Szany's arguments cross the bridge into absurdity, such as her counsel's argument that she should prevail at summary judgment because he is a male and "a staunch conservative" and still representing Szany in this case even though, according to him, "many male lawyers" will not represent women in sexual harassment lawsuits. [*See* DE 312 at 28.] The brief is littered with many such unfounded statements and arguments without any citation to underlying facts or legal authority.

Accordingly, Hammond is entitled to summary judgment on the sexual harassment claim because Szany has failed to present evidence of severe or pervasive harassment against her. Furthermore, Hammond has shown that it promptly investigated the situation, disciplined Garcia with a five-day suspension, and successfully kept Garcia and Szany from interacting after the incident, all of which

-44-

shows a reasonable response on its part.

### 2. The Retaliation Claim Against Hammond

I'll now move on to Szany's retaliation claim. "Title VII also prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). Thus, Szany would be required to show at trial that (1) she engaged in statutorily protected activity; (2) her employer took an adverse action against here; and (3) there was a causal link between the protected activity and the adverse action. *Id.* ("A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of his statutorily protected activity; in other words, the plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two."); *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019) (same). Hammond says that setting the first element aside, the undisputed facts show that Szany cannot succeed on the remaining two elements. If Hammond is right on either count, it is entitled to summary judgment on this claim too.

In saying she suffered an adverse employment action, Szany does not say she was demoted, held back, disciplined, or given a worse assignment. Instead, she focuses on what Hammond allegedly did to her in the car accident lawsuit filed against her and Hammond by a third party. But even assuming that part of her employment includes the hiring of legal counsel by Hammond to defend her, there are still numerous

problems with this claim. In order to show that there was an "adverse" action, she needs to show that the counsel provided to her was deficient or had an actual conflict of interest, not just one she subjectively felt existed. And there is no allegation, let alone evidence, of deficient performance by the attorney, only Szany's alleged conflict of interest.

In order to determine whether a conflict of interest existed, I look to the Indiana Rules of Professional Conduct on the issue. Rule 1.7 states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interest is defined to include "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a person of interest to the lawyer." Ind. R. Prof. Conduct 1.7. Here, it is undisputed that the lawyer hired to represent both the City and Szany in the car accident case is different than the counsel representing Szany or the City in this lawsuit. Likewise, it's undisputed that Szany's and the City's interests in the car accident lawsuit were wholly aligned—the City was sued (and potentially liable) because Szany was driving her patrol car and on the job at the time of the accident. She may have wanted a different lawyer and been unhappy she didn't get one, but it's axiomatic under employee retaliation law that "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Burton v. Board of Regents of University of Wisconsin Sys.*, 851 F.3d 690, 696 (7th Cir. 2017)

(citation omitted). The adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012). Here, the legal representation in the car accident lawsuit had, at most, a tangential relationship to Szany's employment conditions. But more importantly, there was no actual conflict of interest (as opposed to a subjective feeling of one by Szany), so it's impossible to say there was any adverse action whatsoever.

In support of her argument that a conflict existed, Szany eschews the Indiana Rules of Professional Conduct (and in fact fails to cite any legal authority whatsoever in support of her arguments on this claim). [*See* DE 312 at 56-58.] Instead, she points to the fact that the Corporation Counsel for the City of Hammond testified at her deposition that she did not discuss the car accident case with Szany because in her view it "would have been a conflict" to communicate with Szany because of ***this*** lawsuit in which the City is adverse to Szany. Thus, Szany's entire argument regarding retaliation relies on speculation and a statement by an attorney for the City that, as an attorney for the City, she would not communicate with Szany, who she knew was represented by counsel and suing the City in this lawsuit. It's a fundamental ethical rule that attorneys cannot reach out and speak to adverse parties that they know are represented by counsel. Ind. R. Prof. Conduct 4.2. That fact does absolutely nothing to advance Szany's retaliation claim because she still cannot point to any adverse action by the City against her. She has thus failed to show an adverse employment action.

What's more, she has adduced zero evidence of any connection between the

City's actions and her protected activity, *i.e.*, the required "but-for" causation required in Title VII retaliation claims. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (but-for causation in this context "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); *see also Lord.*, 839 F.3d at 563 (summarizing the question as "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?"). "Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation . . .. The mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Here, Szany offers nothing more than speculation and *ipse dixit* that the City's refusal to pay for two lawyers in the car accident lawsuit was because she sued it for sexual harassment. Hammond is entitled to summary judgment on this claim too.

### C.  Garcia's Motion for Summary Judgment

This brings me to Garcia's motion for summary judgment. As alleged against him in the operative complaint, there are only state law claims against him for battery and false imprisonment. The only federal claims in this lawsuit were against Hammond and those have been disposed of above. That leaves Indiana state law torts, being asserted by one Indiana resident (Szany) against another Indiana resident (Garcia). Given the factual overlap with the claims asserted against the City, it made sense for the state law claims to be tried in the same forum as the federal claims under the

-48-

discretionary doctrine of pendent or supplemental jurisdiction. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997); 28 U.S.C. § 1367. But on its own, the case against Garcia is a case which I do not have federal jurisdiction over and there are no "special circumstances" that counsels in favor of allowing it to continue in federal court. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1240 (7th Cir. 1984) ("[T]his court has consistently affirmed the district courts' exercise of discretion in dismissing pendent state law claims without prejudice when the federal claims are dismissed before trial."). Accordingly, the claims against Garcia will be dismissed, without prejudice. Szany can sue Garcia in state court if she so chooses, and the statute of limitations should be a non-issue. *See Huffman v. Hains*, 865 F.2d 920, 923-924 (7th Cir. 1989) ("[T]he statute of limitations should not be a concern in this case because Indiana has a savings statute . . . [which] applies in a case such as this one where a federal court dismisses a state-law claim for lack of subject matter jurisdiction."); I.C. § 34-11-8-1.

## Conclusion

For the foregoing reasons, summary judgment will be granted in favor of the City, the claims against Garcia will be dismissed for lack of jurisdiction, and this case will be brought to a close before me. I have no doubt that this was a terrible experience for Szany. The conduct described was highly inappropriate and shouldn't have happened anywhere, let alone in the workplace. I understand her anger and frustration. The problem is, the evidence presented, taken in a light most favorable to Szany, just does not add up to a meritorious federal claim.

ACCORDINGLY: Plaintiff's Motion for Leave to file an oversized brief [DE 324] is GRANTED; Plaintiff's Motion for Leave to file a Seventh Amended Complaint [DE 326] is DENIED; Plaintiff's Motion to Strike the Declaration of Captain Jeff Long [DE 335] is DENIED; Defendant's Motion to Strike the Declaration of Denise Szany [DE 344] is GRANTED; Plaintiff's Motion for Leave to File a Statement of Genuine Disputes of Material Fact [DE 348] is DENIED; and Plaintiff's Objections to Docket 363 [DE 364] are OVERRULED.

The Defendant the City of Hammond's Motion for Summary Judgment [DE 308] is GRANTED. The Clerk shall ENTER FINAL JUDGMENT in favor of the City of Hammond.

With judgment in favor of the City, the only remaining claims are Indiana state law claims between two Indiana residents concerning an incident that took place in Indiana, and there is no federal jurisdiction over this lawsuit. Garcia's Motion for Summary Judgment [DE 306] is DENIED AS MOOT, and the claims against Garcia are DISMISSED, without prejudice. If Szany wants to pursue those claims, she'll have to do so in state court.

The Clerk is directed to CLOSE the case.

SO ORDERED on May 28, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT